371 So.2d 1010 (1979)
COMMERCIAL CARRIER CORPORATION et al., Petitioners,
v.
INDIAN RIVER COUNTY et al., Respondents.
William Walden CHENEY et al., Petitioners,
v.
DADE COUNTY, Respondent.
Nos. 51462, 53178.
Supreme Court of Florida.
April 19, 1979.
Rehearing Denied July 9, 1979.
*1012 Gilbert E. Theissen, of Gerald M. Walsh & Associates, Fort Lauderdale, for Commercial Carrier Corp., et al.
Alan R. Dakan, of High, Stack, Lazenby & Bender, Miami, for William Walden Cheney et al.
Robert M. Klein, of Stephens, Schwartz, Lynn & Chernay, P.A., Miami, for Indian River County.
Alan E. DeSerio, Larry K. White and H. Reynolds Sampson, Gen. Counsel, Tallahassee, for Florida Department of Transportation.
Steven R. Berger, of Carey, Dwyer, Cole, Selwood & Bernard, Miami, for Dade County.
Ronald W. Brooks and Michael T. Callahan, of Brooks & Callahan, for Departments of Highway Safety and Motor Vehicles and Offender Rehabilitation, amici curiae.
Alan E. DeSerio, S.W. Moore, Jerrold K. Phillips and H. Reynolds Sampson, Gen. Counsel, Tallahassee, for Department of Transportation, amicus curiae.
Robert Orseck, of Podhurst, Orseck & Parks, Miami, for The Academy of Florida Trial Lawyers, amicus curiae.
Jackson L. Peters, of Knight, Peters, Pickle, Niemoeller & Flynn, Miami, for Dade County School Board, amicus curiae.
SUNDBERG, Justice.
It is our task today to determine the scope of the waiver of sovereign immunity resulting from the enactment of chapter 73-313, as amended by chapter 74-235, Laws of Florida, section 768.28, Florida Statutes (1975).[1] The issue reaches us by writ of certiorari from two separate decisions of the District Court of Appeal, Third District, which have been consolidated for review by this Court. The first decision, Commercial Carrier Corporation v. Indian River County,[2] is alleged to be in conflict *1013 with Gordon v. City of West Palm Beach.[3] The second, Cheney v. Dade County,[4] was certified by the district court as involving a question of great public interest. Jurisdiction vests in this Court pursuant to article V, section 3(b)(3), Florida Constitution.

COMMERCIAL CARRIER CORPORATION v. INDIAN RIVER COUNTY
Petitioner, Commercial Carrier Corporation, and its liability insurer, Merchants Mutual Insurance Company, were defendants below in an action for wrongful death arising from the collision of petitioner's tractor-trailer and decedents' automobile. The collision occurred at an unmarked intersection in Indian River County at which it is alleged there had previously been a stop sign and pavement markings governing the road upon which petitioner's vehicle was operating. Petitioner and its liability insurer filed a third-party complaint naming Indian River County and the Florida Department of Transportation (DOT) as third-party defendants. The complaint sought indemnity and contribution for the negligent failure of Indian River County to maintain the stop sign at the intersection, and for the negligent failure of the DOT to paint or replace on the pavement the word "STOP" in advance of the entrance to the intersection. Respondents filed motions to dismiss the complaint, alleging in part that (1) petitioner had failed to comply with the notice requirement of section 768.28(6), Florida Statutes (1975); (2) section 768.28 did not waive the immunity of the state or its agencies from claims for indemnity or contribution; (3) Commercial Carrier had failed to allege the breach of any duty owing to it as opposed to the public at large; and (4) petitioner had failed generally to state a cause of action. The trial court dismissed the third-party complaint, and the District Court of Appeal, Third District, affirmed.

CHENEY v. DADE COUNTY
Julia Ramy filed suit against petitioner Cheney and his liability insurer for damages resulting from an intersection collision on March 14, 1975, in Dade County. Petitioner filed a third-party complaint against respondent, alleging that the county had negligently maintained a traffic light at the intersection and that this negligence was the sole cause of the accident. Petitioner pleaded alternatively that he was only passively negligent and thus entitled to indemnity.
Respondent moved to dismiss the complaint on the following grounds: (1) the complaint failed to state a cause of action because the doctrine of sovereign immunity precludes recovery against respondent; (2) petitioner failed to allege knowledge on the part of the respondent as to the malfunctioning of the traffic light; (3) petitioner failed to allege how sovereign immunity had been waived; and (4) petitioner failed to allege compliance with the notice provisions of section 768.28(6), supra. The trial court granted respondent's motion and dismissed the third-party complaint with prejudice. The District Court of Appeal, Third District, affirmed, holding that no cause of action existed for respondent's allegedly negligent act.
The operative portion of section 768.28 reads:
(1) In accordance with section 13, Art. X, state constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant in accordance *1014 with the general laws of this state, may be prosecuted subject to the limitations specified in this act.
A limitation upon the liability of the state and its agencies and subdivisions is expressed in section 768.28(5):
The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period prior to judgment. Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $50,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state arising out of the same incident or occurrence, exceeds the sum of $100,000. However, a judgment or judgments may be claimed and rendered in excess of these amounts and may be settled and paid pursuant to this act up to $50,000 or $100,000, as the case may be, and that portion of the judgment that exceeds these amounts may be reported to the legislature, but may be paid in part or in whole only by further act of the legislature.
By definition, "state agencies or subdivisions" include "the executive departments, the legislature, the judicial branch, and the independent establishments of the state; counties and municipalities; and corporations primarily acting as instrumentalities or agencies of the state, counties, or municipalities."[5] As a condition precedent to instituting an action on a claim against the state or one of its agencies or subdivisions, the claimant is required to give written notice to the appropriate agency or agencies[6] and the action must be commenced within four years after such claim accrues.[7]
The district court in Commercial Carrier Corporation, supra, asserting that it was unnecessary to discuss the implications of section 768.28, held that it is not actionable negligence for a governmental authority to fail to maintain a traffic control device at a given time and place. Gordon v. City of West Palm Beach, 321 So.2d 78 (Fla. 4th DCA 1975), among other cases, was cited as authority for the holding. In Cheney, supra, the same court applied the holding in Modlin v. City of Miami Beach, 201 So.2d 70 (Fla. 1967), and concluded that section 768.28 "does not create a liability in the State where the act complained of does not give rise to liability in the agent committing the act, because the duty claimed to be violated is a duty owed to the citizens of the state in general and is not a duty owed to a particular person or persons." 353 So.2d at 626. By importing a concept of municipal immunity from tort liability the court reasoned that no cause of action existed for the alleged wrong and, therefore, section 768.28 had no application because it was not intended to create a cause of action where none existed at common law prior to its enactment.
Respondents and amici support the decisions of the district court on several grounds. Apart from the reasoning of the court below, they maintain (1) that section 768.28 was intended to make the tort liability of the state and its political subdivisions coextensive, that liability to be measured by the scope of liability of municipal corporations at the time of enactment of the statute; (2) that there can be no tort liability under the act for essentially governmental functions because "private persons" do not perform such functions; and (3) that the acts or omissions complained of are discretionary in nature, thereby immunizing the governmental authority from liability.
Petitioners and other amici assert a much broader scope of operation for section 768.28, ranging from unlimited liability in tort for all acts or omissions by government to liability at least for those governmental acts and omissions at the operational level which involve no discretion. Each submits *1015 that the conduct complained of in the instant cases supports a cause of action even under a limited view of the statute.
While we are not prepared to embrace the notion that all acts or omissions by governmental authorities will subject them to liability in tort under the statute, nevertheless we conclude that the district court has ascribed much too narrow a field of operation to section 768.28. For the reasons articulated below we disapprove the decisions under review.
First, we believe it to be circuitous reasoning to conclude that no cause of action exists for a negligent act or omission by an agent of the state or its political subdivisions where the duty breached is said to be owed to the public at large but not to any particular person. This is the "general duty"-"special duty" dichotomy emanating from Modlin, supra. By less kind commentators, it has been characterized as a theory which results in a duty to none where there is a duty to all. Regardless, it is clear that the Modlin doctrine is a function of municipal sovereign immunity and not a traditional negligence concept which has meaning apart from the governmental setting. Accordingly, its efficacy is dependent on the continuing vitality of the doctrine of sovereign immunity. If this be so, does the Modlin doctrine survive notwithstanding the enactment of section 768.28? We think not.
The state of the law concerning municipal sovereign immunity on the date of enactment of section 768.28 was clearly enunciated in Gordon v. City of West Palm Beach, supra:
1) as to those municipal activities which fall in the category of proprietary functions a municipality has the same tort liability as a private corporation;
2) as to those activities which fall in the category of governmental functions "... a municipality is liable in tort, under the doctrine of respondent superior, only when such tort is committed against one with whom the agent or employee is in privity, or with whom he is dealing or is otherwise in contact in a direct transaction or confrontation." City of Tampa v. Davis, Fla.App. 1969, 226 So.2d 450;
3) as to those activities which fall in the category of judicial, quasi judicial, legislative, and quasi legislative functions, a municipality remains immune. Hargrove v. Town of Cocoa Beach, supra [96 So.2d 130 (Fla. 1957)]; Modlin v. City of Miami Beach, supra.
321 So.2d at 80 (emphasis in original). This patchwork quilt of analysis resulted from a felt need to ameliorate the sometimes harsh results of applying the doctrine of sovereign immunity to activities of municipal corporations. Commencing with Kaufman v. City of Tallahassee, 84 Fla. 634, 94 So. 697 (1922), which authorized recovery for a pedestrian injured by a municipally owned and operated fire truck, this Court distinguished between the city's governmental functions and its "business, commercial, proprietary" concerns. Thus was the functional test created. If the function was proprietary the city was treated as any nonpublic entity performing a like-type act. If the function was perceived to be purely governmental, however, immunity attached. See Woods v. City of Palatka, 63 So.2d 636 (Fla. 1953); City of Miami v. Oates, 152 Fla. 21, 10 So.2d 721 (1942); Peavey v. City of Miami, 146 Fla. 629, 1 So.2d 614 (1941); Rogers v. City of Miami Springs, 231 So.2d 257 (Fla. 3d DCA 1970).
A further refinement of the doctrine denied immunity even for governmental functions where the duty breached by a member of the executive branch was owed specifically to the individual plaintiff as opposed to the public generally. See Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957); Florida First National Bank v. City of Jacksonville, 310 So.2d 19 (Fla. 1st DCA 1975), cert. discharged, 339 So.2d 632 (Fla. 1976); City of Tampa v. Davis, 226 So.2d 450 (Fla. 2d DCA 1969); City of Hialeah v. Hutchins, 166 So.2d 607 (Fla. 3d DCA 1964); Simpson v. City of Miami Beach, 155 So.2d 829 (Fla. 3d DCA 1963); Thompson v. City of Jacksonville, 130 So.2d 105 (Fla. 1st DCA 1961). Immunity was always deemed to *1016 have existed for legislative, quasi-legislative, judicial and quasi-judicial acts of municipalities. Hargrove v. Town of Cocoa Beach, supra. Although the opinion in Hargrove seemed to signal a substantial relaxation in the scope of sovereign immunity, Modlin, supra, laid to rest any notion that the reach of the opinion extended beyond situations where a "special duty" to the plaintiff was found to exist.
Predicating liability upon the "governmental-proprietary" and "special duty-general duty" analyses has drawn severe criticism from numerous courts and commentators.[8] Consequently, we cannot attribute to the legislature the intent to have codified the rules of municipal sovereign immunity through enactment of section 768.28, Florida Statutes (1975). Even if we were disposed toward respondents' argument, a plain reading of the statute would deny such a construction. Municipalities are unequivocally included within the definition of "state agencies or subdivisions." § 768.28(2), Fla. Stat. (1975). Were it the intent of the legislature merely to make the law of municipal sovereign immunity applicable to the state, its agencies and political subdivisions, there would have been no need to include municipalities within the operation of the statute. Consequently, we conclude that Modlin and its ancestry and progeny have no continuing vitality subsequent to the effective date of section 768.28.
What, then, is the scope of waiver contemplated by section 768.28? Respondents assert that all governmental functions are exempt from waiver by the wording of the statute itself. They point to the language contained in section 768.28(1) and (5):
Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act.
§ 768.28(1), Fla. Stat. (1975) (emphasis supplied).
The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period prior to judgment... .
§ 768.28(5), Fla. Stat. (1975) (emphasis supplied). They argue that since private individuals do not perform governmental functions, there is no waiver where any governmental function is involved. However, this argument has been rejected by the United States Supreme Court in construing the Federal Tort Claims Act. In Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), that Court had occasion to construe the then current version of the federal act, which was almost identical to the Florida act with respect to the language here under consideration.[9] In that case, a tug owner *1017 sought recovery under the federal act for damages alleged to have been caused by the negligence of the Coast Guard in the operation of a lighthouse light. To the same argument herein espoused the Court responded:
But the Government contends that the language of § 2674 (and the implications of § 2680) imposing liability "in the same manner and to the same extent as a private individual under like circumstances . .." must be read as excluding liability in the performance of activities which private persons do not perform. Thus, there would be no liability for negligent performance of "uniquely governmental functions." The Government reads the statute as if it imposed liability to the same extent as would be imposed on a private individual "under the same circumstances." But the statutory language is "under like circumstances," and it is hornbook tort law that one who undertakes to warn the public of danger and thereby induces reliance must perform his "good Samaritan" task in a careful manner.
350 U.S. at 64-65, 76 S.Ct. at 124. In rejecting the government's assertion that it was immune from suit the Court also disavowed the notion that the Federal Tort Claims Act incorporated the concept of municipal tort liability:
Furthermore, the Government in effect reads the statute as imposing liability in the same manner as if it were a municipal corporation and not as if it were a private person, and it would thus push the courts into the "non-governmental"-"governmental" quagmire that has long plagued the law of municipal corporations. A comparative study of the cases in the forty-eight States will disclose an irreconcilable conflict. More than that, the decisions in each of the States are disharmonious and disclose the inevitable chaos when courts try to apply a rule of law that is inherently unsound. The fact of the matter is that the theory whereby municipalities are made amenable to liability is an endeavor, however awkward and contradictory, to escape from the basic historical doctrine of sovereign immunity. The Federal Tort Claims Act cuts the ground from under that doctrine; it is not self-defeating by covertly embedding the casuistries of municipal liability for torts.
350 U.S. at 65, 76 S.Ct. at 124-125 (footnote omitted). For the same reasons articulated above, we refuse to place such a gloss on our waiver statute. To do so would be to essentially emasculate the act and the salutary purpose it was intended to serve.
Respondents' final argument poses a more difficult problem. They maintain that the acts complained of involve the exercise of discretion or judgment by governmental officials or employees and, therefore, the performance of such acts or omissions are exempt from operation of the statute. Petitioners counter with the assertion that unlike the Federal Tort Claims Act, which contains an express exception for discretionary acts,[10] no exception for such acts is expressed in the Florida statute. The implication is that our legislature had available to it the federal act, as is apparent from certain language borrowed from that legislation, and it made the conscious choice not to provide an exception for discretionary acts. While it cannot be denied that our statute contains no such exception, it does not necessarily follow that all acts or omissions by governmental officials or employees may form the basis for recovery against the governmental authority involved. The absence of a "discretionary exception" in their waiver statute has not precluded several jurisdictions from holding that certain areas of governmental conduct remain immune from scrutiny by *1018 judge or jury as to the wisdom of that conduct.[11]
The Court of Appeals of New York in Weiss v. Fote, 7 N.Y.2d 579, 200 N.Y.S.2d 409, 167 N.E.2d 63 (1960), construed that state's broad waiver of immunity statute so as not to authorize an action by an injured pedestrian who alleged negligence on the part of the City of Buffalo in providing too short a "clearance interval" for the traffic signal lights at the intersection where the injury occurred. New York's statute contained no "discretionary exception"; nonetheless the court analyzed two lines of authority predating the waiver statute and concluded that certain judgmental decisions by governmental officials may not be the subject of tort liability. One line of cases rested immunity on the policy of maintaining the administration of municipal affairs in the hands of state or municipal executive officers as against the incursion of courts and juries, while the other rested the immunity on the sovereign character of the state or municipality in the performance of its governmental functions. While the latter cases lost their legal force and effect with the passage of the New York Court of Claims Act, the former retained their vitality because they were not predicated simply upon the premise that the sovereign can do no wrong. They were grounded instead upon a concept of separation of powers which will not permit the substitution of the decision by a judge or jury for the decision of a governmental body as to the reasonableness of planning activity conducted by that body. As articulated by Judge Fuld:
To accept a jury's verdict as to the reasonableness and safety of a plan of governmental services and prefer it over the judgment of the governmental body which originally considered and passed on the matter would be to obstruct normal governmental operations and to place in inexpert hands what the Legislature has seen fit to entrust to experts. Acceptance of this conclusion, far from effecting revival of the ancient shibboleth that "the king can do no wrong", serves only to give expression to the important and continuing need to preserve the pattern of distribution of governmental functions prescribed by constitution and statute.
7 N.Y.2d at 586, 200 N.Y.S.2d at 413, 167 N.E.2d at 66.
The state of Washington has also implied a discretionary function exception in its waiver of immunity statute in the absence of an express exception. The case of Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440 (1965), involved a claim against the state by plaintiffs whose buildings had been destroyed by fire set by an escapee from a state-maintained juvenile correction facility. The allegations of fault on the part of the state related to (i) the maintenance of a certain "open program" (as opposed to close security) at the correction facility; (ii) assignment of the escapee to the "open program"; (iii) assignment of the escapee to a particular type work detail at the facility; and (iv) failure to timely notify local law enforcement agencies of the escape. The state responded that the decisions, acts or omissions complained of involved the exercise of administrative judgment and discretion and could not be properly characterized as tortious conduct. The court recognized that by enactment of the Washington waiver statute the legislature intended to abolish on a broad basis the doctrine of sovereign tort immunity. However, it was concluded that the statute was not as broad as it might have been written. Noting the absence of the varied exceptions found in the Federal Tort Claims Act, the court observed nonetheless that state government was liable for damages only when such damages arise out of "`tortious conduct to the same extent as if it were a private person or corporation.'" 407 P.2d at 444. It was judged necessary to determine where, in the area of governmental processes, orthodox tort liability stops and the act of governing begins. Id. The court recognized that the legislative, judicial *1019 and purely executive processes of government, including discretionary acts and decisions within the framework of such processes, cannot and should not be characterized as tortious. Public policy and maintenance of the integrity of our system of government necessitate this immunity, however unwise, unpopular, mistaken or neglectful a particular decision or act might be. The rationale for this conclusion was stated thus:
The reason most frequently assigned is that in any organized society there must be room for basic governmental policy decision and the implementation thereof, unhampered by the threat or fear of sovereign tort liability, or, as stated by one writer "Liability cannot be imposed when condemnation of the acts or omissions relied upon necessarily brings into question the propriety of governmental objectives or programs or the decision of one who, with the authority to do so, determined that the acts or omissions involved should occur or that the risk which eventuated should be encountered for the advancement of governmental objectives." Peck, The Federal Tort Claims Act, 31 Wash.L.Rev. 207 (1956).
Id. at 444 (emphasis in original). After reviewing the characterizations utilized by a number of courts in attempting to ferret out those acts or functions which remain immune from tort liability, the court proposed the following preliminary test:
Whatever the suitable characterization or label might be, it would appear that any determination of a line of demarcation between truly discretionary and other executive and administrative processes, so far as susceptibility to potential sovereign tort liability be concerned, would necessitate a posing of at least the following four preliminary questions: (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision? If these preliminary questions can be clearly and unequivocally answered in the affirmative, then the challenged act, omission, or decision can, with a reasonable degree of assurance, be classified as a discretionary governmental process and nontortious, regardless of its unwisdom. If, however, one or more of the questions call for or suggest a negative answer, then further inquiry may well become necessary, depending upon the facts and circumstances involved.
Id. at 445. Through application of this test the first two grounds asserted for liability were determined to involve acts for which the state was immune. Although the remaining two bases for liability were not adjudged to involve immune conduct, the state was held not to be liable on standard tort principles of lack of foreseeability and causation.
Ohio has reached the same result under its waiver statute, notwithstanding the absence of an express "discretionary" exception. See Harris v. State, 48 Ohio Misc. 27, 358 N.E.2d 639 (1976).
This concept of exemption from tort liability for the exercise of certain governmental functions bottomed on the concept of separation of powers has found expression in at least one prior decision of this Court. In Wong v. City of Miami, 237 So.2d 132 (Fla. 1970), merchants whose property was damaged in connection with a rally which culminated in civil disorder and plundering sued the city and Dade County for negligent handling of the rally. At the request of merchants bordering the rally area, the city increased police protection in the area. Subsequently, on order of the mayor confirmed by an order of the county *1020 sheriff, the increased police forces were removed. After the forces were removed the rally got out of hand and participants damaged the neighboring stores in excess of $100,000 before police control could be reestablished.
The plaintiffs filed suit predicated on the theory that removal of the officers was a careless and negligent act. The city responded with a motion to dismiss on the grounds that (i) no sufficient connection was alleged between withdrawal of the officers and the injuries complained of; (ii) police protection was a duty owed the public generally which would not inure to the benefit of particular private citizens; and (iii) removal of officers was within the realm of governmental discretion. The county moved for summary judgment. The trial court granted the motions and dismissed the complaint with prejudice. The District Court of Appeal, Third District, affirmed with one judge dissenting. The dissent, relying on Hargrove, supra, concluded that a special duty was demonstrated. The majority, also applying Hargrove, drew the opposite conclusion and cited for analogy Steinhardt v. Town of North Bay Village, 132 So.2d 764 (Fla. 3d DCA 1961), which dealt with the negligent provision of fire protection.
It is important to note that while this Court discharged the writ of certiorari it took issue with the aspect of the majority decision which impliedly conceded negligence on the part of the city but found it not to be actionable because of sovereign immunity:
While sovereign immunity is a salient issue here, we ought not lose sight of the fact that inherent in the right to exercise police powers is the right to determine strategy and tactics for the deployment of those powers. In the Report of the National Advisory Commission on Civil Disorders, issued pursuant to Executive Order 11365 in 1967, the point was frequently made that police visibility was often an operative factor in the raising of tensions, and that withdrawal from an area could be a highly useful tactical tool for the relaxing of tensions in certain situations. The sovereign authorities ought to be left free to exercise their discretion and choose the tactics deemed appropriate without worry over possible allegations of negligence. Here officials thought it best to withdraw their officers. Who can say whether or not the damage sustained by petitioners would have been more widespread if the officers had stayed, and because of a resulting confrontation, the situation had escalated with greater violence than could have been controlled with the resources immediately at hand? If that had been the case, couldn't petitioners allege just as well that that [emphasis theirs] course of action was negligent?
237 So.2d at 134 (emphasis supplied). This was a clear recognition by the Court of a principle of law apart from the ancient doctrine of immunity as a simple aspect of sovereignty. It represents the distinct principle of law alluded to by Judge Fuld in Weiss v. Fote, supra, which makes not actionable in tort certain judgmental decisions of governmental authorities which are inherent in the act of governing.
Hence, we are persuaded by these authorities that even absent an express exception in section 768.28 for discretionary functions, certain policy-making, planning or judgmental governmental functions cannot be the subject of traditional tort liability. Like the Washington court, we recognize that the identification of these functions will in many instances be difficult. The temptation is strong to fall back on semantic labels for ease of application and seeming certainty. However, we eschew this temptation, as it surely will result in a return to the overly structured and often misleading analysis which persists in the law of municipal sovereign immunity.
A semantic test for identification of discretionary governmental functions which should continue to enjoy immunity was attempted and then disavowed in California, whose statute contains a discretionary exception. For a time, the lower appellate courts in California labored unsuccessfully *1021 to develop a dictionary definition of "discretion" which established liability for minor discretionary actions but preserved immunity for high-level decisions.[12] Disavowal of this definitional approach came in Johnson v. State, 69 Cal.2d 782, 73 Cal. Rptr. 240, 447 P.2d 352 (1968), where the California Supreme Court recognized that all governmental functions, no matter how seemingly ministerial, can be characterized as embracing the exercise of some discretion in the manner of their performance. Consequently, that court opted for an analysis predicated on policy considerations and adopted a test articulated in Lipman v. Brisbane Elementary School District, 55 Cal.2d 224, 11 Cal. Rptr. 97, 99, 359 P.2d 465, 467 (1961):
Although it may not be possible to set forth a definitive rule which would determine in every instance whether a governmental agency is liable for discretionary acts of its officials, various factors furnish a means of deciding whether the agency in a particular case should have immunity, such as the importance to the public of the function involved, the extent to which government liability might impair free exercise of the function, and the availability to individuals affected of remedies other than tort suits for damages.
As a tool for identifying discretionary acts under the Federal Tort Claims Act the federal courts, commencing with the decision in Dalehite v. United States, supra, have developed an analysis which distinguishes between decisions made at the "planning level" and those at the "operational level." Planning level functions are generally interpreted to be those requiring basic policy decisions, while operational level functions are those that implement policy.[13]Johnson v. State, supra, likewise employed the planning-operational distinction as an aid to isolate those discretionary functions of government which should be immune from tort liability. The Johnson court was not unmindful of the deficiencies inherent in such an analysis, but perceived that the lack of certainty and predictability of such approach was overridden by its emphasis on the considerations behind the rule of governmental immunity:
We recognize that this interpretation of the term "discretionary" presents some difficulties. For example, problems arise in attempting to translate this concern for the court's role in the governmental structure into an applicable touchstone for decision. Our proposed distinction, sometimes described as that between the "planning" and "operational" levels of decision-making (cf. Dalehite v. United States, supra, 346 U.S. 15, 35-36, 73 S.Ct. 956, [97 L.Ed. 1427]), however, offers some basic guideposts, although it certainly presents no panacea. Admittedly, our interpretation will necessitate delicate decisions; the very process of ascertaining whether an official determination rises to the level of insulation from judicial review requires sensitivity to the considerations that enter into it and an appreciation of the limitations on the court's ability to reexamine it. Despite these potential drawbacks, however, our approach possesses the dispositive virtue of concentrating on the reasons for granting immunity to the governmental entity. It requires us to find and isolate those areas of quasi-legislative policy-making which are sufficiently sensitive to justify a blanket rule that courts will not entertain a tort action alleging that careless conduct contributed to the governmental decision.
73 Cal. Rptr. at 248-249, 447 P.2d at 360-61 (footnote omitted).
Alaska and Hawaii have adopted a similar construction of discretionary function immunity under their respective waiver *1022 statutes. State v. Abbott, 498 P.2d 712 (Alaska 1972); Rogers v. State, 51 Hawaii 293, 459 P.2d 378 (1969). The Utah Supreme Court cited Johnson in a case with substantially the same facts as Rogers and reached a similar conclusion. Carroll v. State, 27 Utah 2d 384, 496 P.2d 888 (1972). Minnesota has held that deployment of police and fire departments during riots falls within the discretionary function exception. Silver v. City of Minneapolis, 284 Minn. 266, 170 N.W.2d 206 (1969).
So we, too, hold that although section 768.28 evinces the intent of our legislature to waive sovereign immunity on a broad basis, nevertheless, certain "discretionary" governmental functions remain immune from tort liability. This is so because certain functions of coordinate branches of government may not be subjected to scrutiny by judge or jury as to the wisdom of their performance. In order to identify those functions, we adopt the analysis of Johnson v. State, supra, which distinguishes between the "planning" and "operational" levels of decision-making by governmental agencies. In pursuance of this case-by-case method of proceeding, we commend utilization of the preliminary test iterated in Evangelical United Brethren Church v. State, supra, as a useful tool for analysis.
Recurring, then, to the instant cases. It is apparent that the maintenance of a traffic signal light which is in place[14] does not fall within that category of governmental activity which involves broad policy or planning decisions. This is operational level activity. So too is the proper maintenance of a traffic sign at an intersection and the proper maintenance of the painted letters "STOP" on the pavement of a highway.[15] As asserted by Commercial Carrier Corporation in its brief (main brief at 17), the gravamen of that petitioner's complaint is the failure of the county and Department of Transportation to maintain existing traffic control devices which had been in place. We do not deal in these cases with the issue of whether or not, or what type of, traffic control devices should have been installed at the particular intersections. Accordingly, we express no opinion with respect to whether liability could be imposed on the governmental bodies involved for failure in the first instance to place traffic control devices at the intersections.
We must also address two additional procedural issues raised in these consolidated cases. The first is whether section 768.28 contemplates waiver of immunity for actions based on contribution or indemnity. The second deals with the notice provisions of the statute.
Regarding the first issue, respondents maintain that waiver is limited to direct tort actions against the state and its agencies and subdivisions. However, this assertion has been clearly rejected by the federal courts in interpreting the Federal Tort Claims Act. United States v. Yellow Cab Co., 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951); Certain Underwriters at Lloyd's v. United States, 511 F.2d 159 (5th Cir.1975). Like the federal courts, we find no logical reason to limit application of our waiver statute to direct actions. Actions for contribution or indemnity grounded on the tortious conduct of the state or its agencies and subdivisions are no less tort claims for purposes of section 768.28 than direct actions. Cf. Village of El Portal v. City of Miami Shores, Florida, 362 So.2d 275 (Fla. 1978).
As to the second issue, we agree with the respondents that the third-party complaints were deficient from the standpoint of properly alleging compliance with the notice provisions of section 768.28(6), Florida Statutes (1975). Compliance with that subsection of the statute is clearly a condition precedent to maintaining a suit. Crumbley v. City of Jacksonville, 102 Fla. 408, 135 So. 885 (1931); High v. City of Jacksonville, 51 Fla. 207, 40 So. 1032 (1906). Consequently, the performance of the condition *1023 should be alleged in the complaint in accordance with Florida Rule of Civil Procedure 1.120(c). In Cheney, there was no allegation of statutory compliance. In Commercial Carrier Corporation, it was alleged that proper notice had been given to both governmental defendants, but there was no allegation that timely written notice was given to the Department of Insurance as is also required by section 768.28(6). Nonetheless, failure of the pleadings in this regard does not call for dismissal with prejudice. In view of our holdings herein, the third-party complaint in each case should have been dismissed with leave to amend.
Accordingly, the petitions for writ of certiorari are granted, the decisions of the District Court of Appeal, Third District, are quashed, and these consolidated cases are remanded to the district court with directions to remand to the trial court for proceedings not inconsistent with this decision.
It is so ordered.
ENGLAND, C.J., and ADKINS, HATCHETT and ALDERMAN, JJ., concur.
OVERTON, J., dissents with an opinion, with which BOYD, J., concurs.
OVERTON, Justice, dissenting.
I dissent. By allowing a negligence action against the state and county for failure to properly maintain a public roadway, the majority opinion, in my view, contravenes the legislative intent and purpose of section 768.28, Florida Statutes (1975). The majority accepts the legal principle that there can be no action against the state or county unless the legislature has authorized it. Although politically this type of legal action against the state may be desirable, it is not permissible under the provisions of the statute adopted by the legislature.
The subject statute expressly provides that it applies only "under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant ..." section 768.28(1) (emphasis added), and "The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances ... ." section 768.28(5) (emphasis added).
The effect of the majority opinion is to allow negligence claims against the state and counties for failure to properly maintain miles of interstate and primary state and county roads. I am unable to accept the premise required by the majority that the failure to timely fix a traffic light, the failure to put a stop sign in place, and the failure to repaint "STOP" on the pavement of a highway are "circumstances" for which a "private person" would be liable. Common sense dictates that the maintenance of thousands of miles of public roadways is not the kind of activity which private individuals engage in, but is uniquely governmental in nature.
Without question, this is a perplexing and inconsistent area of the law, not only in this jurisdiction but in other jurisdictions in the nation as well. Illustrative are the decisions of the United States Supreme Court in Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), and Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). In Dalehite, the United States Supreme Court held that the negligence of the Coast Guard in failing to prevent a catastrophic fire by regulating the storage of a potentially explosive fertilizer and by its negligent failure to properly fight the fire after it had started was outside the parameters of the federal tort claims act. On the other hand, in Indian Towing Co., the same Court, without receding from Dalehite, held that the negligence of the Coast Guard in the operation of a lighthouse was a proper action under the act. The majority accepts the reasoning of the United States Supreme Court in the latter decision and analogizes it to the facts in the instant cases. It is difficult, however, to reconcile Indian Towing Co. with Dalehite, and I would not use one as a basis for ascertaining the intent of the legislature in adopting section 768.28, Florida Statutes (1975).
*1024 The majority also rejects the argument that the use of funds for the maintenance of public roadways is a discretionary function and, therefore, immune from liability. This is, in my view, a legitimate contention. The availability of such funds is established by appropriation formulas, and discretionary decisions must be made as to the maintenance projects which can be accomplished with available funds. The majority opinion in effect says a judge or jury can override that discretionary decision.
For the reasons expressed, I would affirm the district court's decisions because I discern no legislative intent to allow recovery under section 768.28, Florida Statutes (1975), for the negligent maintenance of public roadways.
BOYD, J., concurs.
NOTES
[1] We do not deal here with personal immunity of individual officers acting in their official capacity. This distinct principle of law is explored in cases such as McNayr v. Kelly, 184 So.2d 428 (Fla. 1966), and Rivello v. Cooper City, 322 So.2d 602 (Fla. 4th DCA 1975).
[2] 342 So.2d 1047 (Fla. 3d DCA 1977).
[3] 321 So.2d 78 (Fla. 4th DCA 1975).
[4] 353 So.2d 623 (Fla. 3d DCA 1977).
[5] § 768.28(2), Fla. Stat. (1975).
[6] § 768.28(6), Fla. Stat. (1975).
[7] § 768.28(12), Fla. Stat. (1975).
[8] E.g., Elgin v. District of Columbia, 119 U.S. App.D.C. 116, 337 F.2d 152 (1964); K. Davis, Administrative Law of the Seventies § 25.07 (1976); W. Prosser, Law of Torts § 131 (1976); 43 Mo.L.Rev. 387, 388 (1978); 57 Ore.L.Rev. 478, 479 n. 6.
[9] The relevant provisions of the Federal Tort Claims Act were 28 U.S.C. §§ 1346(b) and 2674 (1951):

§ 1346(b) ... [T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
§ 2674. The United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.
[10] 28 U.S.C. § 2680(a) (1975).
[11] "Of course, it is not a tort for government to govern...." Dalehite v. United States, 346 U.S. 15, 57, 73 S.Ct. 956, 979, 97 L.Ed. 1427 (1953) (Jackson, J, dissenting).
[12] See Note, The Discretionary Function Exception to Government Tort Liability, 61 Marq. L.Rev. 163, 168 (1977).
[13] Although the Dalehite opinion suggested that implementation of policy is also immune, this premise has never been adopted by the state courts and has been limited by subsequent federal decisions. See Reynolds, The Discretionary Function Exception of the Federal Tort Claims Act, 57 Geo.L.J. 81 (1968); 61 Marq.L.Rev. at 170.
[14] Cheney, supra.
[15] Commercial Carrier Corporation, supra.