465 So.2d 1301 (1985)
Connie Jean ROBINSON, Appellant,
v.
STATE of Florida, DEPARTMENT OF TRANSPORTATION, Appellee.
No. AY-70.
District Court of Appeal of Florida, First District.
March 14, 1985.
*1302 James M. Miller of Beckham & McAliley, Miami, for appellant.
Jim Smith, Atty. Gen., Pamela Lutton-Shields, Asst. Atty. Gen., Tallahassee, for appellee.
ERVIN, Chief Judge.
Robinson appeals from a partial summary judgment[1] in favor of the Florida Department of Transportation (DOT), holding that agency immune from governmental tort liability. We reverse and remand for further consistent proceedings.
On February 15, 1979, appellant was involved in an automobile accident at the intersection of State Road 25 and State Road 542 in Dundee, Polk County, Florida in which she suffered personal injuries. State Road 25, at its intersection with State Road 542, is a four-lane highway with left-hand turn lanes. Traffic proceeding into the intersection from all four directions is controlled by an electronic signal device. In the northbound lanes of State Road 25, the left-hand turn signal controlling traffic at the intersection is automatically activated when a vehicle passes over a device located under the pavement of the left-hand turn lane, and traffic in the through-southbound lane is signaled to stop.
At the time of the accident, DOT was repainting the arrows of the left-hand turn lane, and because the northbound left-hand turn lane was blocked off to traffic, the automatic activator for the left-hand turn lane was inaccessible and therefore inoperable. On this date, appellant drove her automobile in heavy traffic in a northerly direction on State Road 25  a route she had frequently taken in the past  and as she approached the intersection, she attempted to make a left turn onto State Road 542. As the left-hand turn lane was, as stated, inaccessible, she decided to make the turn from the left-through lane. Upon entering the intersection, appellant was hit by a truck proceeding south on State Road 25. No one was at that time directing traffic.
Appellant's second amended complaint alleged that DOT had created a dangerous condition to appellant and others similarly situated by blocking off the left-hand turn lane on northbound State Road 25; by prohibiting access for northbound travelers to the automatic activator located in the left-turn lane; by failing to warn, adequately and properly, appellant and others similarly situated of the dangerous condition existing at said intersection; and/or by failing to take proper measures to correct the dangerous condition or protect appellant and the traveling public from said condition; and/or properly maintain said intersection during repair operations. It was further specifically alleged that DOT had failed to warn motorists proceeding southerly on State Road 25 that repair and/or maintenance work was being conducted at the intersection of State Road 25 and State Road 542, and that such failure created a hazardous condition.
During his deposition, a DOT maintenance foreman testified that appellant's attempt to make a left turn from the left-through lane was the proper thing to do under the circumstances. A road maintenance worker for DOT testified that drivers who wished to turn left during repairs could do so only from the through lane, go to the red light, take their chances and turn at the red light.
A safety specialist for DOT stated that when a left-hand turn lane is blocked off at a work site, warning signs, in accordance *1303 with DOT's safety manual, should be placed at three separate 500-foot intervals in advance of the intersection on both sides of the road in the following manner: At the nearest interval to the intersection, or 500 feet away, "Flagman Ahead" signs should first be placed; at the next interval, "Men Working" signs; and finally, 1500 feet from the intersection, "Construction Ahead" signs. The road maintenance worker stated that he had followed the safety manual in putting out a total of 12 signs on both sides of the northbound and southbound lanes of State Road 25, warning of the workmen in the area. He admitted, however, that there were no signs cautioning the public specifically that the left-hand turn activator was not operable. Moreover, the driver of the truck who was involved in the accident stated that he did not see any signs advising that there was construction work ahead, while approaching the intersection in the southbound lane.
Appellant argues that the trial court erred in granting partial summary judgment because there are genuine issues of fact which are in doubt. Appellant concedes that the government's initial decision of whether to utilize a left turn signal automatically activated by means of a trip device embedded in the pavement is one made at the planning level and therefore immune from suit. See Department of Transportation v. Neilson, 419 So.2d 1071 (Fla. 1982). She continues, however, that once the decision is made, the government's later decision to block off the turn lane during road maintenance, thereby preventing activation of the turn signal without proper warning, is an operational level function and not immune from suit. We agree.
The Florida Supreme Court in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979) and its progeny have established that certain discretionary, judgmental, planning-level decisions are immune from suit, but that certain operational decisions are not so immune. For example, decisions concerning whether to upgrade and improve a roadway inhere within the basic design decision and are judgmental, planning level functions insulating the government from suit. Perez v. Department of Transportation, 435 So.2d 830 (Fla. 1983). However, the "failure to properly maintain an existing traffic control device" is an operational decision and an action under such circumstances could be brought against the governmental entity. Neilson, 419 So.2d at 1075.
DOT asserts that the decision among different alternatives as to how traffic should be handled at a particular work site is essentially identical in nature to the initial decision of whether a traffic control device should be placed at a specific location  a decision classified by the Florida Supreme Court as a planning-level activity. DOT further contends that if the decision in question is a planning-level function, and a set of guidelines has been adopted describing how such activity should be carried out, further actions implementing such guidelines will themselves be made at the planning level.
We reject DOT's contention on numerous grounds. We consider that DOT's decision to block off the turn lane which prevented access to the automatic activator in the left turn lane was not, under the circumstances, a policy-making or planning-level decision. Although the decision to place traffic devices at a particular intersection would, under Commercial Carrier and the Neilson trilogy, be a planning-level function, the negligent failure to maintain such devices is not immune from tort action.
The third case of the Neilson trilogy, City of St. Petersburg v. Collom, 419 So.2d 1082, 1086 (Fla. 1982), iterated three types of situations which can subject the governmental entity to liability:
(1) [T]he necessary warning or correction of a known dangerous condition; (2) the necessary and proper maintenance of existing improvements, as explained and illustrated in Commercial Carrier, 371 So.2d 1010 (Fla. 1979); and (3) the proper construction or installation and design of *1304 the improvement plan, as explained in Neilson, 419 So.2d 1071 (Fla. 1982).
(emphasis in original)
In our view the facts in the case at bar display the existence of the first two factors: the failure to warn the public of a known dangerous condition created by the agency and arguably unknown to the public, and the negligent maintenance of an existing intersection. We conclude that the evidence before us more greatly approximates the latter factor than the former. As stated in Neilson, the term maintenance means maintenance of an intersection or a traffic control device "as it exists". 419 So.2d at 1078. The examples cited in Commercial Carrier and frequently referred to in later opinions as operational-level activities are the failure of an agency to maintain properly a stop sign or pavement markings that had previously stated "STOP" in advance of the entrance of an intersection. 371 So.2d at 1022.
The instant case involves a similar example. Due to the passage of time, the painted arrows in the left turn lane had become faded. DOT was aware of the problem and undertook the repair or maintenance of an existing intersection by repainting the arrows. Genuine issues of material fact remain unresolved as to whether DOT carried out its maintenance responsibilities in a non-negligent manner. Although there was testimony from a DOT worker and the foreman at the work site that DOT complied with certain manual guidelines with respect to maintenance of state roads,[2] the truck driver involved in the accident testified that he saw no signs cautioning the existence of construction work ahead. Certainly, appellant, who had frequently proceeded unimpeded through this intersection at previous times could, in the absence of adequate warnings, have reasonably assumed that measures would be taken by DOT during repairs to halt southerly bound traffic on State Road 25, while she traversed a left turn onto State Road 542.[3] At the very minimum, questions of material fact remain regarding the adequacy of the warnings posted during the maintenance or repair operations; therefore the entry of summary judgment was error. Cf. Osorio v. Metropolitan Dade County, 459 So.2d 332 (Fla. 3d DCA 1984); see also Department of Transportation v. Webb, 438 So.2d 780, 781 (Fla. 1983) (the failure to place warning signs at a railroad crossing known to be dangerous is an operational-level function).
In so stating, we are not unaware of a recent opinion of the Fourth District Court of Appeal in Eder v. Department of Highway Safety and Motor Vehicles, 463 So.2d 443 (Fla. 4th DCA 1985), which absolved the governmental entity from liability on facts somewhat similar to those in the present case. There, a traffic light at an intersection was not functioning due to a large power failure caused by heavy rains and storms. An officer for the Florida Highway Patrol was summoned to the intersection to investigate an automobile accident, and while there observed that several motorists were violating a traffic control statute by driving through the intersection of the non-functioning traffic signal without *1305 slowing down or stopping their vehicles. Fearing that there might be a second collision, the officer decided to issue citations for the violations. While the officer was filling out several citations, a second accident occurred at the intersection. The injured party brought a tort action against the State of Florida, Department of Highway Safety and Motor Vehicles, alleging negligence. The Fourth District Court of Appeal approved the trial court's final summary judgment, stating that the officer on duty had several options which he could have undertaken. They included:
Traveling to another busier intersection in the area to attempt to direct traffic; direction of traffic at this intersection; placement of his Florida Highway Patrol vehicle in the center of this intersection; going about routine patrol; or, issuing citations for failure to stop at non-functioning traffic signal.
463 So.2d at 444.
The court in Eder concluded that the governmental entity is not subject to suit when faced with a decision of whether to direct traffic due to a faulty traffic signal, and that the officer's choice, among others, is "not [one] subject to judicial scrutiny." Id. We could agree with the Eder decision if the complaint in that case predicated liability solely on the failure of the governmental entity to provide the public with the necessary warning of a latent dangerous condition known by it to exist and which it had created. In Eder the hazard  the non-functioning traffic signal  was not the result of governmental activity, but was rather attributable to natural causes. On such facts, Eder is distinguishable from the case at bar in that no governmental entity there was responsible for the creation of the hazard. Eder, however, fails to mention the second situation enumerated in Collom which may give rise to governmental tort liability: the negligent maintenance of an existing improvement. Neither Commercial Carrier, nor the Neilson trilogy requires, as a precondition to liability, that the government create the hazard, if the hazard could be attributed in part to the government's failure to maintain an existing improvement. It would seem that if in Eder the government had knowledge of the signal device's condition, an operational duty would then arise, placing on the public entity the responsibility of properly maintaining an existing malfunctioning traffic light. The officer's choice, among other alternatives, of issuing traffic citations to violators would, in our judgment, not remove the case from jury consideration in determining the issue of whether the government had properly maintained a traffic control signal at an intersection where one accident had already occurred.
To summarize, DOT's failure to maintain properly an existing intersection must be considered an operational-level activity, hence actionable.
Reversed and remanded.
MILLS and ZEHMER, JJ., concur.
NOTES
[1] Although the summary judgment is only partial in that the action remains pending against other defendants, it was final as to DOT, the only prevailing party below.
[2] In regard to DOT's argument that its actions were planning-level functions in that they complied with DOT's manual by placing warning signs in the work site area, we answer that governmental immunity cannot be invoked by simply showing that DOT formulated and adhered to a schedule of road maintenance at an accident site. Foley v. State of Florida, Department of Transportation, 422 So.2d 978 (Fla. 1st DCA 1982).
[3] In addition to holding DOT immune from suit, the lower court alternatively held that "the acts of the Department were not the legal cause of the injuries sustained by the plaintiff." We consider, however, the evidence as to proximate causation was hardly ripe for determination by summary judgment. As recognized in Gibson v. Avis Rent-A-Car System, Inc., 386 So.2d 520, 522 (Fla. 1980), although the intervening cause of the plaintiff's injuries may be solely attributable to the plaintiff, if, however, the intervening cause is foreseeable, the original negligent actor may yet be liable. Moreover, the question of its foreseeability is ordinarily one for the trier of fact. Id. The evidence regarding causation in the case at bar is, we conclude, for the trier of fact, and the summary judgment is additionally reversed on the alternative theory advanced by the lower court.