DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SCHOOL BOARD OF BROWARD COUNTY,**
Appellant,

v.

**SEBASTIAN McCALL, JR.,**
Appellee.

No. 4D19-104

[May 19, 2021]

Appeal of nonfinal order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; David A. Haimes, Judge; L.T. Case No. CACE 15-015969 (08).

Thomas W. Paradise and Lauren Stone of Vernis & Bowling of Broward, P.A., Hollywood, for appellant.

Mark T. Packo of Ged Lawyers, LLP, Boca Raton, for appellee.

PER CURIAM.

The School Board of Broward County ("School Board") appeals a nonfinal order denying its motion for summary judgment based on sovereign immunity. We reverse because we determine that the School Board is entitled to sovereign immunity and remand for the trial court to grant the School Board's motion for summary judgment.

## Background

Sebastian McCall, Jr. sued the School Board after he suffered injuries while attending a high school basketball game. He alleged that after the game ended, a crowd of people leaving the school suddenly turned around and ran back onto campus. To avoid being an obstacle in the way of the running crowd, he turned and ran with the crowd. While running, he fell, injuring his hip and shoulder. In his complaint, McCall alleged the School Board failed to provide adequate security and crowd control.

The School Board moved for summary judgment based on sovereign immunity and argued that McCall's claim of negligent security was

directed at a planning level function, rather than an operational function. The record reflected that before each school year, the principal, assistant principal, and school resource officer of each high school, along with a third-party security specialist, would meet and determine the necessary number of police and security personnel for each sporting event.

McCall argued that the basketball game was an "operational level event" and that the School Board's alleged failure to provide adequate security was not protected by sovereign immunity.

The trial court denied the School Board's motion and found that the security personnel decisions were an operational function and that the question for the jury would be "whether or not adequate measures were put in place to protect the community."

The School Board appealed.

## Analysis

"The standard of review governing a trial court's ruling on a motion for summary judgment posing a pure question of law is de novo." *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1074 (Fla. 2001).

*Duty*

McCall relies on *City of Belle Glade v. Woodson*, 731 So. 2d 797 (Fla. 4th DCA 1999), for the proposition that the government has the same legal duty as a private landowner to protect invitees from reasonably foreseeable harms. In *Woodson*, we concluded that the city was not entitled to sovereign immunity following a shooting at a dance at the city's civic center. *Id.* at 797. The plaintiffs alleged that the city "fail[ed] to provide adequate security." *Id.* We held that the city "does not enjoy sovereign immunity but rather has the same common law duty as a private person to properly maintain and operate the property." *Id.* at 798.

However, the Florida Supreme Court has criticized the *Woodson* decision and noted that its opinions issued after *Woodson* "make clear that duty and sovereign immunity are not to be conflated." *Sanchez v. Miami-Dade Cnty.*, 286 So. 3d 191, 192 (Fla. 2019). The Florida Supreme Court's "opinions have rendered obsolete [our] reasoning in *Woodson* that the existence of a duty renders sovereign immunity inapplicable." *Id.* at 194.

2

Accordingly, the School Board owed a duty to provide security to patrons at the basketball game. However, that duty does not supersede the School Board's claim of sovereign immunity.

*Sovereign Immunity*

The School Board argues that it is entitled to sovereign immunity because its decisions regarding security at the basketball game were planning level functions.

"[T]he separation-of-powers provision present in article II, section 3 of the Florida Constitution requires that 'certain [quasi-legislative] policy-making, planning or judgmental governmental functions cannot be the subject of traditional tort liability.'" *Wallace v. Dean*, 3 So. 3d 1035, 1053 (Fla. 2009) (second alteration in original) (quoting *Com. Carrier Corp. v. Indian River Cnty.*, 371 So. 2d 1010, 1020 (Fla. 1979)). "On the other hand, decisions made at the operational level—decisions or actions implementing policy, planning, or judgmental governmental functions—generally do not enjoy sovereign immunity." *Miami-Dade Cnty. v. Pozos*, 242 So. 3d 1152, 1162 (Fla. 3d DCA 2017) (citing *Com. Carrier Corp.*, 371 So. 2d at 1021). "Planning level functions are generally interpreted to be those requiring basic policy decisions, while operational level functions are those that implement policy." *Com. Carrier Corp.*, 371 So. 2d at 1021.

Generally, "the number and placement of supervisory personnel constitutes a discretionary decision" protected by sovereign immunity. *Davis v. State, Dep't of Corr.*, 460 So. 2d 452, 453 (Fla. 1st DCA 1984); *see also Sanchez v. Miami-Dade Cnty.*, 245 So. 3d 933, 940 (Fla. 3d DCA 2018) ("[A] municipality's decision on where to allocate its police resources is a planning level decision that is not subject to civil liability."). We agree with the dissent that schools are not prisons or public parks, and that a school board has a different relationship to students than a law enforcement agency does to prisoners. However, we disagree with the dissent and Judge Salter's dissent in *Sanchez*, that a school, working with a law enforcement agency, has a different relationship than a county does to the park-going general public.

In *Commercial Carrier*, the Florida Supreme Court provided a four-part test for determining if a government action is shielded from tort liability by sovereign immunity:

> "(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective?

(2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective?

(3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?

(4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

If these preliminary questions can be clearly and unequivocally answered in the affirmative, then the challenged act, omission, or decision can, with a reasonable degree of assurance, be classified as a discretionary governmental process and nontortious, regardless of its unwisdom. If, however, one or more of the questions call for or suggest a negative answer, then further inquiry may well become necessary, depending upon the facts and circumstances involved."

371 So. 2d at 1019 (quoting *Evangelical United Brethren Church of Adna v. State*, 407 P.2d 440, 445 (Wash. 1965)).

In this case, the challenged act is the security plan enacted to protect attendees at the basketball game. School boards have a governmental policy and objective to give students a well-rounded, free education. As a matter of policy and objective, the School Board deemed it important to teach students the importance of sports, particularly in the context of a public event. In doing so, the School Board obtained an interlocal agreement with another governmental entity (law enforcement) to implement the policy and objective and meet its duty to protect the attendees.[1] Thus, the security plan was essential to the realization of the School Board's objective and policy to teach students. Without the security plan, the course and direction of the teaching policy and objective would not have occurred. Additionally, devising the plan required the exercise of judgment and expertise by the principal, assistant principal,

---

[1] We note that some school boards create their own law enforcement entities.

4

school resource officer (law enforcement), and a third-party security specialist to determine the necessary number and distribution of security personnel. Finally, the School Board clearly possessed the lawful authority to devise and implement the security plan. Thus, the four-part test of *Commercial Carrier* was met.

McCall argues that the *Commercial Carrier* test is not satisfied but offers little explanation as to why any of the questions should be answered in the negative. He cites *Wallace* as support for his argument that the security plan at the basketball game should be considered an operational level function, but *Wallace* is distinguishable.

In *Wallace*, the plaintiff sued a county sheriff pursuant to Florida's Wrongful Death Act following deputies' response to a 911 call. 3 So. 3d at 1041. Deputies performed a safety check according to the department's established 911 call-response system, found someone unresponsive, and failed to call an ambulance (among other questionable decisions). *Id.* The person was taken to the hospital the next day and died. *Id.* The trial court dismissed the suit, in part, because "the Sheriff's deputies were performing a quasi-legislative discretionary function" in implementing the call-response system "for which the Sheriff enjoys sovereign immunity." *Id.*

The Florida Supreme Court analyzed the *Commercial Carrier* test and concluded that although the case involved the "basic policy decision to establish a 911 call-response system," the questioned act was not essential to the realization of that policy. *Id.* at 1054. Additionally, "[t]he actions of the deputies were 'not necessary to or inherent in policy or planning,' and merely reflected a secondary decision as to how preexisting policies, plans, programs, or objectives would be implemented." *Id.* (quoting *Kaisner v. Kolb*, 543 So. 2d 732, 737 (Fla. 1989)).

Notably, the questioned act in *Wallace* was the deputies' response to a 911 call, *not* the 911 call-response system. The deputies' actions were clearly an operational level function implementing the call-response system. In this case, however, the questioned act is the security plan. McCall does not allege any individual negligence by any of the security personnel nor does he accuse the School Board of failing to follow its own plan and procedures.

## Conclusion

The School Board's security plan for the basketball game was a planning level function protected by sovereign immunity. Therefore, we

5

reverse and remand for the trial court to grant summary judgment in favor of the School Board.

*Reversed and remanded with instructions.*

CONNER and KUNTZ, JJ., concur.
GROSS, J., dissents with opinion.

GROSS, J., dissenting.

The majority relies upon *Davis v. State, Department of Corrections*, 460 So. 2d 452, 453 (Fla. 1st DCA 1984), and *Sanchez v. Miami-Dade County*, 245 So. 3d 933, 940 (Fla. 3d DCA 2018), to conclude that the School Board's security plan in this case was a planning or judgmental governmental function that is shielded by sovereign immunity.

But these cases should not control because schools are not prisons or public parks. A school board has a different relationship to students than a law enforcement agency does to prisoners or a county does to the park-going general public. To paraphrase Judge Salter's dissent in *Sanchez*, the majority's holding is that "any matter involving the security of invitees" to an event on school property is "an inherently governmental function implicating the discretionary allocation of law enforcement resources." 245 So. 3d at 947 (Salter, J. dissenting).

As I see it, the planning level function in this case was the School Board's decision to have a program of interscholastic sports that spectators could attend. The proper level or type of security at a game is an operational level function that will differ from school to school and sport to sport. A badminton contest would require a different level of security than tackle football. This approach is analogous to the Florida Supreme Court's handling of a government unit's operation of swimming facilities. *See Avallone v. Bd. of Cty. Comm'rs of Citrus Cty.*, 493 So. 2d 1002, 1005 (Fla. 1986). In *Avallone*, our supreme court expressly rejected the argument that "the decision not to supervise the swimming facility was a planning level or discretionary decision for which there is immunity." *Id.* The *Avallone* court explained:

> A government unit has the discretionary authority to operate or not operate swimming facilities and is immune from suit on that discretionary question. However, once the unit decides to operate the swimming facility, it assumes the common law duty to operate the facility safely, just as a private individual is obligated under like circumstances.

6

*Id.* Likewise, in this case, once the School Board decided to operate an interscholastic sporting event, it assumed the common law duty to operate the event safely, just as a private individual would be obligated under like circumstances.

This case is also similar to the issue considered in *Comuntzis v. Pinellas County School Board*, 508 So. 2d 750 (Fla. 2d DCA 1987). There, the Second District considered a complaint that alleged that a student was beaten during lunch outside the school cafeteria. *Id.* at 751. After analyzing the claim under *Commercial Carrier Corp. v. Indian River County*, 371 So. 2d 1010, 1021–22 (Fla. 1979), the court concluded that the plaintiff's complaint had stated a cause of action against the school board, holding that "as to the School Board there is a common law and statutory duty to supervise students, that supervision is not protected by sovereign immunity, supervision is operational and not discretionary." *Id.* at 753.

For these reasons, I dissent.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

7