376 So.2d 39 (1979)
Raeann WALLACE and James R. Wallace, II, Appellants,
v.
NATIONWIDE MUTUAL FIRE INSURANCE CO., a Foreign Corporation, Carol M. Mikita, Aetna Casualty & Surety Company, a Foreign Corporation, the City of Port St. Lucie, a Municipal Corporation, Appellees.
No. 77-2287.
District Court of Appeal of Florida, Fourth District.
October 24, 1979.
Larry Klein, West Palm Beach, and Patrick Massa of Cone, Owen, Wagner, Nugent, Johnson & McKeown, P.A., West Palm Beach, for appellants.
Marjorie D. Gadarian of Jones, Paine & Foster, P.A., West Palm Beach, for appellees, City of Port Saint Lucie and Aetna Cas. & Sur. Co.
Michael Jeffries of Neill Griffin Jeffries & Lloyd, Fort Pierce, for appellees, Nationwide Mut. Fire Ins. Co. and Carol M. Mikita.
LETTS, Judge.
This appeal springs from a summary judgment which recited that the failure of a city to immediately restore a fallen stop sign did not constitute actionable negligence against it. We reverse.
Whatever disposition we might have otherwise made, we are now controlled by the recent consolidated decision by the Supreme Court in Commercial Carrier Corporation v. Indian River County and Cheney v. Dade *40 County, 371 So.2d 1010 (Fla. 1979). Therein our Supreme Court extinguished the "Modlin doctrine"[1] and we cannot quarrel with its demise. However we note that the Modlin message was at least easy to discern and apply. By contrast the new test substituted in Commercial Carrier appears to us to be a complex four point test,[2] which might with some judicial straining, be construed either to exempt each and every governmental action, or alternatively, exclude none of them. However, the bottom line in Commercial Carrier seems to be that "planning" levels of government decision making are still exempt from tort liability while "operational" activity is not.
Suffice it to say that the Commercial Carrier case involved failure to maintain a stop sign or paint a road, while Cheney centered round a disabled traffic signal. In the case at bar we likewise have an alleged failure to maintain a stop sign which would clearly be operational in nature. The result is inescapable.
It remains to be seen whether the legislature in enacting Section 768.28 of the Florida Statutes (1975), or the Supreme Court in Commercial Carrier, ever considered the specter of governmental authorities being found negligent and liable for the routine acts and inspections by their building and plumbing officials, just to quote two examples. (In the now defunct Modlin case a building inspector was involved.) Certainly in the light of the recent myriad of law suits filed against developers for shoddy construction and failure to abide by specifications, it will be interesting to see what develops. We might also reflect on what might come forth out of the State's requirement that automobiles be routinely inspected. In fact the possible permutations resulting in the Government bearing the financial responsibility for the misdeeds of the private sector, simply because it is trying to safeguard the general public by regulatory action, is staggering.
REVERSED AND REMANDED.
DOWNEY, C.J., and BERANEK, J., concur.
NOTES
[1] Modlin v. City of Miami Beach, 201 So.2d 70 (Fla. 1967).
[2] "After reviewing the characterizations utilized by a number of courts in attempting to ferret out those acts or functions which remain immune from tort liability, the court proposed the following preliminary test:

Whatever the suitable characterization or label might be, it would appear that any determination of a line of demarcation between truly discretionary and other executive and administrative processes, so far as susceptibility to potential sovereign tort liability be concerned, would necessitate a posing of at least the following four preliminary questions: (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision? If these preliminary questions can be clearly and unequivocally answered in the affirmative, then the challenged act, omission, or decision can, with a reasonable degree of assurance, be classified as a discretionary governmental process and nontortious, regardless of its unwisdom. If, however, one or more of the questions call for or suggest a negative answer, then further inquiry may well become necessary, depending upon the facts and circumstances involved." Commercial Carrier at 1019.
.....
"... In order to identify those functions, we adopt the analysis of Johnson v. State, supra, which distinguishes between the `planning' and `operational' levels of decision-making by governmental agencies. In pursuance of this case-by-case method of proceeding, we commend utilization of the preliminary test iterated in Evangelical United Brethren Church v. State, supra, as a useful tool for analysis." Commercial Carrier at 1022.