Mr. Richard R. Ellington County Attorney, Palm Beach County
QUESTIONS:
1. Does the Board of County Commissioners of Palm Beach County have the authority to post `enforceable' traffic control devices (stop signs, yield signs, speed limit signs) on `public' roads which have not been formally accepted by the Board of County Commissioners as part of the county road system?
2. If the roads must be formally accepted by the Board of County Commissioners as county roads, can the Board of County Commissioners of Palm Beach County, Florida, accept said roads for traffic control jurisdiction without obligating itself to maintain said roads?
3. If the answer to either Question One or Two above is in the affirmative, would Palm Beach County be liable for automobile accidents that may occur due to inadequate maintenance of the roads?
4. Can the Board of County Commissioners of Palm Beach County, Florida, enter into an agreement with an independent water control district to provide the above referenced traffic control functions on `public' roads which are currently being maintained by said districts?
SUMMARY:
Unless and until judicially or legislatively determined otherwise, the County Commission is generally authorized by law, but not required, to post and maintain traffic control devices on the `public' roads in question (roads which are part of a complex network of substandard `public' shellrock roads in unincorporated areas of Palm Beach County, some created by posting and viewing, some created by declarations of easement, some built by water control districts, some dedicated by subdivision plats), and to defray the costs thereof from county funds; the exercise of this authority is not conditioned upon `formal acceptance' of maintenance responsibilities over such roads by the County Commission; the question of whether Palm Beach County would be liable for automobile accidents that may occur due to inadequate maintenance of the roads is a judicial qeustion which this office is not empowered to determine; the agreement into which the Palm Beach County Board of County Commissioners proposes to enter with an independent water control district to provide traffic control functions on public roads currently being maintained by said districts is unnecessary and inappropriate, and would have no legal efficacy since ch. 316 vests no traffic control authority in such districts.
Your inquiry notes that there exists, in many unincorporated areas of Palm Beach County, a complex network of substandard `public' shellrock roads. You state that these roads have been created in various ways, some dedicated to the public on older platted and recorded subdivisions, some created as a result of posting and viewing, and some created by filing of declarations of easement. Most, however, were built over the years by water control districts in conjunction with digging of canals and the roads so formed have been subsequently used for access to maintain the canals and the water control districts have maintained such roads for many years, paying the costs thereof from special assessments levied against property owners within the districts. You also state that the public has used these roads for many years. Your letter indicates that recently there have been several serious automobile accidents on these roads and the Board of County Commissioners would like to provide traffic control devices for these roads by posting stop signs, yield signs, and speed signs, but is concerned that it might, by so doing, be obligated to provide maintenance for such roads or expose itself to possible tort liability.
AS TO QUESTION 1:
You question whether the Board of County Commissioners of Palm Beach County has the authority to exercise traffic control jurisdiction over these roads and to post traffic control devices (stop signs, yield signs, and speed limit signs) on `public' roads which have not been formally accepted by the Board as part of the county road system.
From the facts stated in the inquiry and your first question, it appears that none of these `public' roads, or the dedication thereof to the public or easements granted for such public use or the roads constructed and maintained by the water control districts and used by the public for many years, have been `formally' accepted by the County Commission or duly established as county roads or properly made a part of the county road system. Whether these roads or any of them have in fact and law been accepted by the county or whether the county has acquired a right-of-way or easement for county road purposes or the public has acquired the right to use the same to travel by motor vehicle are mixed questions of law and fact which this office is without the requisite authority to adjudicate or settle and which must be determined by the courts in appropriate adversary proceedings initiated for that purpose. The general rule is that county funds may be expended only for the construction, maintenance or repair of county roads. See Padgett v. Bay County, 187 So.2d 410 (1 D.C.A. Fla., 1966); Collins v. Jackson County, 156 So.2d 24 (1 D.C.A. Fla., 1963); AGO's 073-222, 075-309, 078-88. Cf. AGO 079-18. Thus, if these `public' roads are not county roads and a part of the county road system they may not be maintained or repaired by the county or county funds expended therefor; therefore, under this general rule, county funds may not be used to defray the costs of installation and maintenance of the traffic control devices and signs in question. However, until judicially or legislatively determined otherwise, for the dual state and county purposes provided for in the Florida Uniform Traffic Control Law, which does not limit its application or its enforcement to county maintained roads and which applies anywhere throughout the county where the public has the right to travel by motor vehicle, I have the view the county is authorized by law, but not required, to exercise traffic *3670 control jurisdiction over the `public' roads in question and to post and maintain enforceable traffic control devices and signs thereon, and to defray the costs thereof from county funds.
Section 316.006(3), F.S., expressly provides, in pertinent part:
 Section 316.006. Jurisdiction. — diction to control traffic is vested as follows:
 (3) COUNTIES. — shall have original jurisdiction over all streets and highways located within their boundaries, except all state roads and those streets and highways specified in subsection (2) [regarding municipalities], and may place and maintain such traffic control devices which conform to the manual and specifications of the Department of Transportation upon all streets and highways under their original jurisdiction as they shall deem necessary to indicate and to carry out the provisions of this chapter or to regulate, warn, or guide traffic. . . . (Emphasis supplied.)
Thus, s. 316.006(3), F.S., expressly grants counties the authority to control traffic `over all streets and highways located within their boundaries, except all state roads and those streets and highways [subject to municipal control] . . . .' (Emphasis supplied.) See also ss. 316.072(1) and 316.640(2), respectively, providing that the provisions of ch. 316 shall apply to the operation of vehicles upon all county-maintained highways and wherever vehicles have the right to travel and the sheriff's office shall enforce all of the traffic laws of the state on all streets and highways in the county and elsewhere throughout the county wherever the public has the right to travel by motor vehicle.
Moreover, s. 316.008 expressly provides in subsection (1)(b) that:
 The provisions of this chapter shall not be deemed to prevent local authorities [including all public officials of the counties, s. 316.003(20), F.S.], with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power, from:
 Regulating traffic by means of police officers or official traffic control devices . . . . (Emphasis supplied.)
And s. 316.072(1), F.S., provides that the provisions of ch. 316 shall apply to the operation of vehicles upon all county maintained highways and wherever vehicles have the right to travel. Cf. AGO's 075-123, 073-323, 072-383. Section 316.074(1) requires the driver of any vehicle to obey any traffic control device applicable thereto. Therefore, I conclude that the Board of County Commissioners has the authority to post traffic control devices on roads under its jurisdiction, as noted above, and elsewhere vehicles have the right to travel within the county. This authority is tempered by the uniform standards for traffic control devices set forth in s. 316.0745, F.S., as established by the Department of Transportation. Note also that while s.316.008(1)(j) grants counties general authority to alter or establish speed limits on roads within their jurisdiction, s.316.189(2) (regulating speed on `county-maintained roads') would appear to be a specific limitation on the authority of counties in this regard. Thus, in the absence of any judicial direction, I am reluctant to say whether counties possess authority to set speed limits on the roads which are involved in this question. See also
s. 316.640, F.S. (sheriff to enforce all of the traffic laws on all streets and highways of the county and elsewhere throughout the county wherever the public has the right to travel by motor vehicle).
Additionally, I conclude that the above-referenced statutes, while authorizing counties to control traffic and to post traffic control devices on all streets and highways and wherever the public has the right to travel by motor vehicle within their jurisdiction, do not condition the exercise of this authority upon `formal acceptance' of maintenance responsibilities over or the assumption of the responsibility for the operation and maintenance of such roads by the Board of County Commissioners. Cf. s.177.081(2), F.S., providing in regard to the dedication of easements, rights-of-way and streets on plats of subdivided lands that approval of such plats by the County Commission shall not `be construed as creating an obligation upon (the County Commission) to perform any act of construction or maintenance within such dedicated areas except when the obligation is voluntarily assumed by the (County Commission).' Cf. s. 177.081(2) with Robinson v. Town of Riviera, 25 So.2d 277 (Fla. 1946), which holds that acceptance of an offer of dedication for road purposes may be by formal resolution, or `by public user,' and with s. 335.01, F.S., which defines and designates `public roads' for the purposes of ch. 335, F.S., to be `all roads open to travel by the public generally and dedicated to the public use, according to law or by prescription, and roads which are constructed out of public funds and dedicated for general public usage . . . .' Thus, based upon the aforecited statutory provisions and authorities, and unless and until judicially or legislatively determined otherwise, I conclude that the county is authorized by law to exercise traffic control jurisdiction over the above described `public' roads and to post and maintain legally enforceable traffic control devices and signs thereon, even though such roads have not been accepted by the county's governing body as part of the county road system.
AS TO QUESTION 2:
Since it is implicit in my response to your first question that the `public' roads in question need not be formally accepted by the governing body of the county as county roads, it is not necessary to respond to your second question and it requires no specific answer.
AS TO QUESTION 3:
As noted above, counties are authorized, but not required to exercise their traffic control powers under ch. 316, F.S. Accordingly, it is a prerogative of the County Commission to determine the scope of their operations in this regard, within the bounds set by ch. 316, and in turn to accept responsibility for, and to properly execute such authority once undertaken. However, whether the exercise of traffic control jurisdiction over and the posting and maintenance of the traffic control devices and signs on the `public' roads in question as considered in Question One would operate to fix potential tort liability on the county for any motor vehicle accidents that might occur due to the negligent maintenance of such traffic control devices and signs by the county is a mixed question of law and fact which this office is without the requisite power to determine. I note that a recent decision of the Florida Supreme Court imposed liability on county governments for its negligence in maintenance of a traffic signal light, painted `STOP' letters, and a stop sign at a highway intersection. Commercial Carrier Corp. v. Indian River County,371 So.2d 1010 (Fla. 1979). That court held that the `maintenance of a traffic sign at an intersection and the proper maintenance of the painted letter `STOP" did not involve broad policy decisions and instead should be considered `operational level activity' which isnot shielded from tort liability. 371 So.2d at 1022. See also
Wallace v. Nationwide Mut. Fire Ins. Co., 376 So.2d 39 (4 D.C.A. Fla., 1979), holding that the alleged failure of a city to restore a fallen stop sign was an operational activity, for which it was liable; Welsh v. Metropolitan Dade County, 366 So.2d 518, 521 (3 D.C.A. Fla., 1979), holding that a negligence action against a county based on improper maintenance of county roads is not barred by sovereign immunity, and that a county has a duty to keep its streets in reasonably safe condition, and to warn of known dangerous conditions, Continental Insurance Co. v. Belflower,355 So.2d 840 (1 D.C.A. Fla., 1978), in which the First District held, in a negligence action against a county for improper maintenance of a narrow unpaved road, that there was insufficient evidence under s. 95.361 to support the statutory presumption that the road was a county road. Cf. Pasco County v. Johnson, 67 So.2d 639 (Fla. 1953), and Lovey v. Escambia County, 141 So.2d 761 (1 D.C.A. Fla., 1962), which construed an earlier version of s. 95.361.
AS TO QUESTION 4:
You next inquire as to whether the Board of County Commissioners of Palm Beach County can enter into an agreement with an independent water control district to provide the above-described traffic control functions on public roads which are currently being maintained by such a district.
Since s. 316.006, F.S., vests jurisdiction to control traffic only in the state (through the Department of Transportation), chartered municipalities and the counties; s. 316.008 authorizes only `local authorities,' defined by s. 316.003(20) to include officers and public officials only of the several counties and municipalities, to exercise the police power to regulate traffic by means of traffic control devices and to alter or establish speed limits within the provisions of ch. 316; and s. 316.640 vests the enforcement of the traffic laws of this state only in the state and its agencies, the counties and chartered municipalities; the affected water control districts have no statutory authority or power to contract for traffic control functions to be performed by the county or to agree that such be jointly exercised by the districts and the county. Any agreement to that end, therefore, would have no legal efficacy and would seem to be inappropriate in the circumstances hereinbefore delineated in this opinion. Such an agreement would not appear to be authorized under s. 163.01, F.S. Such an agreement would not seem to be within the contemplation of s. 125.01(1)(p), F.S., nor operate to serve any legal purpose or, for the purposes of this opinion, have any legal effectiveness or force thereunder. For the county to transfer any of its functions or powers to the affected districts or to contract with such districts for the performance by the districts, the approval of the electors of both the affected districts and the county must first be obtained in compliance with and pursuant to s. 4, Art. VIII, State Const. Cf. AGO's 074-220, 077-35; see Sarasota County v. Town of Longboat Key, 355 So.2d 1197 (Fla. 1978). Therefore, and in view of the answer to your first question, I conclude that the agreement contemplated in your fourth question is both unnecessary and inappropriate in the instant factual and legal circumstances, and would have no legal efficacy.
Prepared by: Anne Curtis Terry, Assistant Attorney General