418 So.2d 1035 (1982)
The CITY OF JACKSONVILLE, a Municipal Corporation, Appellant,
v.
Jimmy Wayne DeRAY, Appellee.
No. AD-450.
District Court of Appeal of Florida, First District.
July 2, 1982.
Rehearing Denied August 18, 1982.
Dawson A. McQuaig, Gen. Counsel, William Lee Allen, Asst. Counsel, David C. Carter, Asst. Counsel, Jacksonville, for appellant.
Hugh M. Davenport of Smith, Davenport, Bloom & Harden, Jacksonville, for appellee.
JOANOS, Judge.
The City of Jacksonville appeals a final judgment, following a jury trial, in which it was found 50% negligent with regard to the conditions which led to appellee's injuries. Prior to trial the City's motion for summary judgment on the issue of immunity from tort liability was denied. At trial its motion for directed verdict was denied and after trial, the City's motion for judgment N.O.V. or in the alternative, for new trial, was denied. On appeal, the City argues that the denial of a directed verdict or a judgment N.O.V. in its favor was error. We agree and reverse.
DeRay was involved in an accident the night of July 9, 1979 when, while driving a small truck in a hard rain, he failed to round a curve on Duval Road. The truck collided with a bridge guardrail, uprooted two guardrail posts, cleared the 30 foot wide creek over which the bridge passed, landed on the opposite bank, and turned over. DeRay suffered a severed spinal cord and he is paralyzed from the waist down.
DeRay sued the City, alleging that the City breached its duty and carelessly or negligently failed to design, construct, or maintain Duval Road in a reasonably safe condition; was negligent in allowing an unreasonably narrow bridge to be located in an unreasonably sharp curve without sufficient warnings to motorists of the danger; and was negligent in failing to adequately illuminate the bridge or curve or otherwise warn motorists using the road at night of the degree of the curve or width of the bridge.
At the time of the accident the posted speed limit on Duval Road was 45 miles per hour. Existing markings included a curve *1036 sign on the approach to the curve and bridge, and a "slippery when wet" sign to which a 30 miles per hour plate was attached. The City did not design or construct the road, rather, it took over maintenance of the existing road in 1971, thus, as the case proceeded, the focus was on signalization and maintenance.
At trial Mr. Henry Mock, a traffic engineer with the City, stated that the City had adopted the Manual on Uniform Traffic Control Devices (the Manual) as the standard for signalization and markings. Mock acknowledged that his division, the Traffic Engineering Division, had received memos from the City's Streets and Highways Division, recommending different signalization on this section of Duval Road. Mock said the recommended changes had not been made because the bridge was properly signed and the curve could be negotiated in the rain at 30 miles per hour. Signalization is the job of the Traffic Division.
Plaintiff/appellee presented expert testimony by an accident consulting engineer, Rolf W. Roley, who had viewed photographs of the area and read the reports. This expert based his testimony on the Manual. He opined that an appropriate speed at the curve would be 20 miles per hour due to the sharpness of the curve and the fact that it immediately preceded a bridge. He then stated that a turn sign, rather than a curve sign, would have been appropriate, because at speeds above 30 miles per hour a curve sign is used and for speeds below 30 miles per hour a turn sign is used. In his estimation a turn sign should have been placed 250 feet from the end of the bridge together with a speed advisory sign. In addition, in his opinion, delineators were needed on the edge of the road beginning at the turn sign and continuing through the bridge guardrail. Roley said the location was a problem because of the proximity of the bridge in relation to the curve.
Mr. Mock had testified that a turn differed from a curve in that it involves an angle of 90 degrees or more, and that the Manual indicates if speed is reduced to 30 m.p.h. or less a turn sign should be used. There was also testimony that some portions of the Manual are mandatory and some are advisory. Excerpts from the Manual were introduced in evidence.
On appeal the City argues that the marking and signalization on Duval Road and the decision whether to follow remedial recommendations are planning activities under Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979), and Ingham v. State, Department of Transportation, 399 So.2d 1028 (Fla. 1st DCA 1981), therefore it is immune from tort liability in this case. In Ingham v. State, Department of Transportation, 399 So.2d 1028 (Fla. 1st DCA 1981), this court held that the activities of construction of a road with a curve; position, shape, and size of a median; and adequacy of signalization, are discretionary policy functions and not operational activities. Even though the instant case also deals with adequacy of signalization, appellee makes a unique argument that signalization is an integral part of the duty to maintain. Appellee contends the planning phase of the City's activities was concluded when the Manual was adopted as the standard and thereafter compliance with the Manual was an operational function, citing cases in which it has been held that road maintenance is an operational function.[1] As an alternative, the City argues there was no actionable negligence on its part. To these arguments, appellee responds that the City was negligent in maintenance, repair, and failing to properly warn of a known dangerous condition, and that a jury could conclude that the existing markings were not in compliance with the Manual, proving that the City was negligent.
*1037 We agree that the planning stage of the City's activities ended with the adoption of the Manual; putting the Manual into effect, insofar as its provisions are mandatory, would be operational. However, we have scrutinized the portions of the Manual introduced at trial and included in the record, and it appears the City was in compliance with the mandatory provisions. Cf. Payne v. Palm Beach County, 395 So.2d 1267 (Fla. 4th DCA 1981) (duty to warn met with placement of signs meeting more than minimal requirements of "State Manual for Traffic Control Devices"); State, Department of Transportation v. Cooper, 408 So.2d 781 (Fla. 2d DCA 1982) (accident caused by absence of stop ahead sign dictated by "Manual on Uniform Traffic Control Devices for Streets and Highways" adopted by DOT).
For example, under "General Provisions" in the Manual it is provided that the word "shall" indicates a mandatory condition, "should" an advisory condition, and "may" a permissive condition. Turning to the guidelines for the use of curve as opposed to turn signs, we find no mandatory language is used in describing the circumstances under which either sign is intended to be used. The Manual states that a curve sign "is intended for use where engineering investigations of roadway, geometric, and operating conditions show the recommended speed on the curve to be in the range between 30 and 60 miles per hour... ." The turn sign is intended for use where the recommended speed on a turn is 30 m.p.h. or less. In this case the posted speed was 45 m.p.h. (or 30 m.p.h. when wet). Setting a speed limit is a planning function. Ferla v. Metropolitan Dade County, 374 So.2d 64 (Fla. 3d DCA 1979). It therefore, cannot be reasonably said that the curve sign was inappropriate under the Manual's mandatory provisions.
With regard to placement of the warning signs, the portions of the Manual included in the record indicate that "in rural areas, warning signs should normally be placed about 750 feet in advance of the hazard or conditions" and in urban areas where speeds are relatively low "the advance distance should only be about 250 feet." (e.s.) With regard to placement, then, the Manual is advisory; in addition, the record contains no evidence of how far from the hazards the warning signs were actually located other than an unverified suggestion by plaintiff's counsel that the sign bearing the speed plate was 125 feet from the curve or bridge.
Although the plaintiff's expert witness also opined that delineators should have been placed on the edge of the road leading up to the guardrail, the Manual indicates that use of delineators is mandatory on expressways, but "[t]hey may be provided on other classes of roads." In addition, object markers for objects adjacent to the roadway, as opposed to objects in the roadway, are not mandatory and use of the chevron sign is not mandatory.
In short, there was no breach of duty in that there was no showing that the City failed to comply with the mandatory provisions of the Manual which had been adopted as a standard.
Accordingly, the final judgment appealed from is REVERSED and the proceeding is remanded to the Circuit Court with instructions to enter a judgment in favor of appellant.
THOMPSON and WIGGINTON, JJ., concur.

ON MOTION FOR REHEARING
JOANOS, Judge.
In a motion for rehearing, appellee directs our attention to the location in the record of testimony as to the distance between the warning signs and the hazards involved in this case. The statement in our opinion as to the lack of such evidence was offered as additional information, and does not affect the determination that with regard to placement of signs the Manual is advisory. We correct the original opinion by deleting from page five the partial sentence: "in addition, the record contains no evidence of how far from the hazards the warning signs were actually located other *1038 than an unverified suggestion by plaintiff's counsel that the sign bearing the speed plate was 125 feet from the curve or bridge." The final sentence in that paragraph should read "With regard to placement, then, the Manual is advisory."
In all other respects the motion for rehearing is denied.
THOMPSON and WIGGINTON, JJ., concur.
NOTES
[1] Wojtan v. Hernando County, 379 So.2d 198 (Fla. 5th DCA 1980) (maintenance of road, shoulder in good, safe condition is operational); Wallace v. Nationwide Mutual Fire Insurance Co., 376 So.2d 39 (Fla. 4th DCA 1979) (failure to immediately restore fallen stop sign is operational); Ferla v. Metropolitan Dade County, 374 So.2d 64 (Fla. 3d DCA 1979) (setting speed limit and deciding whether to widen lanes are planning; median strip design is similar to maintaining already installed traffic devices and is operational).