484 So.2d 1302 (1986)
Alma SALAS, and Faustino Salas, Her Husband, Appellants,
v.
PALM BEACH COUNTY BOARD OF COUNTY COMMISSIONERS, Appellee.
No. 85-264.
District Court of Appeal of Florida, Fourth District.
March 5, 1986.
*1303 Ronald V. Alvarez, P.A., West Palm Beach, for appellants.
Marlyn J. Altman, Asst. Co. Atty., West Palm Beach, for appellee.
GLICKSTEIN, Judge.
This is an appeal from a directed verdict in favor of the defendant in an action arising out of an automobile collision. We reverse and remand for new trial.
Plaintiffs/appellants, Alma and Faustino Salas, sued the County/appellee, alleging that due to the negligence of a County land survey crew, a traffic accident resulted, injuring the plaintiff wife. At the close of the plaintiffs' evidence, the trial court granted a directed verdict in favor of the defendant County.
On September 12, 1979, a land survey crew from the County was sent out to do a road alignment project at the intersection of Australian Avenue and Belvedere Road. The crew found it necessary to occupy the left hand turn lane of eastbound Belvedere Road, the lane which would normally be used to turn left on to Australian Avenue northbound. Belvedere Road has two additional eastbound lanes. There is some dispute over whether the orange "dunce caps" placed by the survey team blocked off only the left turn lane, or whether the center lane was blocked off as well. It is clear, from a negative view, that the turn lane was inaccessible; and that the green arrow was deactivated. The question is whether the plaintiffs proved that the County should have done more of a positive nature to protect motorists who were operating dangerous instrumentalities in an area of construction and repair and who were being required to make quick, informed, safe decisions.
On the day in question, Marie Blount was travelling east on Belvedere with the intention of making a left turn on to Australian. As she approached the intersection, she saw the crew members in orange vests, and the flagmen waving her away from the turning lane. Although she did not specifically recall whether the center lane was blocked off, she recalled becoming confused and moving into the extreme right lane. Hers was the first car in line stopped at the red light, and she had her left turn blinker on. When the light went green, she saw a hand go up; and although she did not know what that action meant, she proceeded to turn left. She did not see a "no left turn" sign. As she entered the intersection, her car collided with that of Alma Salas, who was travelling west on Belvedere. Mrs. Salas was injured as her car struck the passenger side of the car driven by Blount.
Mrs. Salas and her husband sued the County, alleging that the County, by blocking off the left turn lane, knowingly created a dangerous condition; and that the County had a duty to warn motorists of the condition and to properly supervise traffic to prevent accidents. The complaint further alleged that the County breached this duty by failing to prevent eastbound motorists from turning left into oncoming traffic and by failing to warn westbound motorists of the possibility of traffic turning left into their path.
At the outset of the trial, the trial judge ruled that, based upon his understanding of case law, the relevant standard of conduct for the County employees was established by the Manual on Traffic Control and Safe Practices, adopted by the County prior to the accident in question. Although both parties were in agreement that the Manual set the applicable minimum standards, there was a dispute over what evidence would be admissible to prove the minimum standards set by the Manual. The plaintiffs were prepared to offer an expert to testify as to the minimum standard of care set by the Manual. The County argued a motion in limine, seeking to exclude the expert's testimony, on the basis of City of Jacksonville v. DeRay, 418 So.2d 1035 (Fla. 1st DCA 1982). DeRay, the defendant argued, holds that the Manual itself, with its uniform use of mandatory, advisory and permissive language, is the only proper evidence of the minimal standard of care. The court agreed with *1304 the defendant, and granted a motion to strike testimony by plaintiffs' expert relating to the standard of care for the County to the extent that it exceeded the mandatory language of the Manual.
Thereafter, upon the court's request that the parties argue a motion for a directed verdict, the court found that "the plaintiff has not proven any negligence on the part of defendant city [sic] which was a proximate cause of this accident, and I will grant a directed verdict."

I.
Appellants maintain that there was sufficient evidence of negligence on the part of the County to submit to the jury, even assuming the correctness of the court's exclusion of all portions of the expert's testimony that did not relate to the "mandatory" provisions of the Manual. The County on this appeal has put forth two separate bases on which it contends the directed verdict was proper. These arguments, which will be discussed in turn, relate to the standard of care as set forth in the Manual, and to the issue of proximate cause.

A. The Manual
Although the plaintiffs introduced substantial testimony relating to the entire system of flagmen, road markers and directional signs employed by the survey crew to regulate traffic flow through the blocked intersection, the issue of the County's liability is narrowed to the question whether reasonable care was taken to prevent motorists such as Blount from making a left turn at the intersection, either through the use of a "no left turn" sign, or a crew member directing traffic, or some other means.
Appellants argue that the Manual did contain mandatory provisions which the County should have observed in order to prevent the left turn; alternatively, they cite the case of Robinson v. State Department of Transportation, 465 So.2d 1301 (Fla. 1st DCA 1985) for the proposition that they had a right to present evidence of the appropriate standard of care, exceeding the mandatory language of the Manual. Since the latter issue goes more to the correctness of the judge's ruling to exclude certain portions of the expert's testimony, discussion will be reserved for Point II on appeal.
Appellants submit that the following Manual provisions are mandatory and establish the County's failure to conform to minimum standards of due care. Section 6A-1 of the Manual entitled "Need for Standards" states:
Problems of traffic-control occur when traffic must be moved through or around highway or street construction, maintenance operations, or utility work. Working on or adjacent to roadways while traffic flows is dangerous to the men who are constantly exposed to a stream of vehicular traffic. It is also dangerous to the motorist who may suddenly be forced into a situation which he did not or could not anticipate.
The relatively high frequency and cost of accidents related to roadway construction, maintenance operations and utility work indicate a need for positive traffic controls in areas where work is being performed. These traffic conditions, which are essentially temporary, are more dangerous and difficult to control because, to the motorist, they are unexpected and not in accordance with the normal patterns of highway traffic [Emphasis added].
Section 6A-3, "Application of Standards," states, in pertinent part:
Since it is not practical to prescribe detailed standards of application for all the situations that may conceivably arise, standards are presented here for the most common situations. It is emphasized that these are desirable standards for normal situations and that additional protection must be provided when special complexities and hazards prevail. ...
Although each situation must be dealt with individually, conformity with the provisions established in this Manual is *1305 required. In particular situations not adequately covered by the provisions of this Manual, the protection of the traveling public and of the workmen on the scene will dictate the measures to be taken, consistent with the general principles set forth herein [Emphasis added].
Section 6B-3, "Position of Signs," states:

Signs shall be placed in positions where they will convey their message most effectively and placement must therefore be accommodated to roadway design and alignment. Signs shall be so placed that the driver will have adequate time for response [Emphasis added].
Section 6B-13, "Design and Application of Warning Signs," states in pertinent part:
Where any part of the roadway is obstructed or closed, construction approach warning signs are required to alert traffic well in advance of these obstructions or restrictions to normal traffic flow [Emphasis added].
Section 6B-14, "Application of Approach Warning Signs," states:
Construction approach warning signs are used to alert traffic, well in advance, as to serious roadway obstructions or restrictions due to work on the highway... . These signs may be any appropriate combination of, or repetition of, the approach signs or other suitable temporary warning signs... . If it is not practical to indicate the exact distances, a secondary legend AHEAD may be substituted for the distance, although it should not be used so far advance as to lose its significance.
The County maintains that the Manual did not contemplate a regulatory "no left turn" sign, citing Section 6B-7:
Construction or maintenance operations are usually temporary in duration, warranting special traffic control measures. Provisional control of traffic will usually be accomplished through warning signs, while existing regulatory signs will ordinarily remain in place.
There is no explicit mandatory provision in the rules requiring a no left turn sign under these circumstances. However, as the more general provisions cited by the appellants make clear, it was mandatory upon the County to take positive precautions to provide for the safety of motorists passing through the intersection. It is just not reasonable for the County to argue that its sole duty in this situation was to conform to the letter of the "shall" provisions; the Manual's requirement that precautions be taken cannot be construed as "advisory" or "permissive" simply because the word "shall" does not appear in the paragraph. Of course, it may ultimately turn out that there was no need to erect a sign, and that the County conformed to minimal standards of care by posting a flagman in the intersection. But the fact remains that Ms. Blount was not given an explicit indication that left turns were forbidden; and she made the turn. Considering the quantum of evidence that is required to overcome a directed verdict in a civil case, we conclude a jury should have been allowed to decide whether the County exercised the mandatory standard of care in the Manual.

B. Proximate Cause
The County maintains that even if it was guilty of some negligence in supervising traffic at the intersection, its negligence did not proximately cause the accident. The negligence of Marie Blount, the County claims, was the sole proximate cause of the accident. In support, the County cites her alleged violations of Sections 316.122 and 316.151, Florida Statutes, in that she failed to yield the right of way on a left turn, and made the left turn from an improper lane. These supervening acts of negligence, appellee argues, could not have been foreseen.
The concept of foreseeability urged by the County is overly narrow and at odds with the established law on proximate cause. This precise issue was decided adversely to the County in the remarkably similar case of Robinson v. Dept. of Transportation, supra. In Robinson, the plaintiff suffered injuries when her car collided *1306 with another car travelling in the opposite direction, as she attempted to make a left turn. The Department of Transportation had been repainting the arrows of the left turn lane, rendering that lane inaccessible to the plaintiff. The turn indicator light was inoperable, as it was here. The plaintiff's theory of recovery was essentially identical to the instant case; i.e., that the DOT created a dangerous situation by occupying the turning lane and that it negligently failed to warn motorists of the hazards of making a left turn. 465 So.2d at 1302.
The trial court in Robinson held, inter alia, that the acts of the DOT were not the legal cause of the plaintiff's injuries. The district court disagreed, holding that the intervening negligence of the plaintiff did not cut off the DOT's liability, so long as the intervening cause was foreseeable. Id. at 1304, n. 3. The court went on to note that the question of foreseeability is ordinarily one for the trier of fact, citing Gibson v. Avis Rent-A-Car System, 386 So.2d 520, 522 (Fla. 1980).
These principles are controlling here. This is not a case like those cited by the County, in which a remote condition or cause merely furnishes the "occasion" for an intervening act of negligence. Assuming, as the County suggests we do, that the County was negligent in failing to warn motorists that a left turn was prohibited, then it had every reason to foresee that drivers accustomed to making left turns at this busy intersection would become confused and attempt to make the turn at the green light, see Robinson, 465 So.2d at 1304. Conceivably, if Marie Blount made the turn as a willful act of misconduct, the County would not be expected to anticipate it. But there is no evidence that Blount's conduct fell in this category. The question of foreseeability was clearly one for the jury. Lifter, Inc. v. Varnado, 480 So.2d 1336 (Fla. 3d DCA 1985); Stahl v. Metropolitan Dade County, 438 So.2d 14 (Fla. 3d DCA 1983); Vendola v. Southern Bell Telephone and Telegraph, 474 So.2d 275 (Fla. 4th DCA 1985).

II.
This court has held, and both parties would agree, that conformance to the minimum standard of care established by the Manual was all that was required of the County in this case. Payne v. Palm Beach County, 395 So.2d 1267 (Fla. 4th DCA 1981). How these minimum standards are to be proven is the question. The rigid standard of proof advocated by the appellees, and adopted by the court below, is that only evidence relating to provisions of the Manual using the mandatory language "shall" is admissible on the question of the County's liability. This standard is not found in Payne; rather, its source lies in DeRay, supra, 418 So.2d at 1037. Finding this to be the applicable standard, the trial court granted a motion to strike all testimony of the expert not relating to the mandatory provisions of the Manual.
The importance of this ruling to the County was twofold. Not only was the expert's interpretation of the standard of reasonable care established by Manual excluded, but the County could argue that it was immune from suit to the extent that the provisions of the Manual were not mandatory, under the holding of Commercial Carrier v. Indian River County, 371 So.2d 1010 (Fla. 1979).
Commercial Carrier is the supreme court's comprehensive statement on the extent to which a governmental entity is protected from suit, under the doctrine of sovereign immunity, "discretionary" or "planning level" actions. The DeRay case applied Commercial Carrier to a situation analogous to the case at bar, holding that the defendant city's decision to place a curve sign instead of a turn sign at a given intersection did not contravene any mandatory provision of the Manual on Uniform Traffic Control Devices, and hence was immune from tort liability. 418 So.2d at 1036-37.
The County's arguments on immunity are undermined by Robinson v. Department of Transportation, supra, which *1307 was decided by the same court as DeRay without mention of the prior case. The factual setting of Robinson is discussed above. Judge Ervin stated:
Appellant argues that the trial court erred in granting partial summary judgment because there are genuine issues of fact which are in doubt. Appellant concedes that the government's initial decision of whether to utilize a left turn signal automatically activated by means of a trip device embedded in the pavement is one made at the planning level and therefore immune from suit. See Department of Transportation v. Neilson, 419 So.2d 1071 (Fla. 1982). She continues, however, that once the decision is made, the government's later decision to block off the turn lane during road maintenance, thereby preventing activation of the turn signal without proper warning, is an operational level function and not immune from suit. We agree.
... .
DOT asserts that the decision among different alternatives as to how traffic should be handled at a particular work site is essentially identical in nature to the initial decision of whether a traffic control device should be placed at a specific location  a decision classified by the Florida Supreme Court as a planning-level activity. DOT further contends that if the decision in question is a planning-level function, and a set of guidelines has been adopted describing how such activity should be carried out, further actions implementing such guidelines will themselves be made at the planning level.
465 So.2d at 1303. The court went on to hold that mere compliance with Manual guidelines is not dispositive of the liability of the governmental entity:
The instant case involves a similar example. Due to the passage of time, the painted arrows in the left turn lane had become faded. DOT was aware of the problem and undertook the repair or maintenance of an existing intersection by repainting the arrows. Genuine issues of material fact remain unresolved as to whether DOT carried out its maintenance responsibilities in a non-negligent manner. Although there was testimony from a DOT worker and the foreman at the work site that DOT complied with certain manual guidelines with respect to maintenance of state roads,[2] the truck driver involved in the accident testified that he saw no signs cautioning the existence of construction work ahead. Certainly, appellant, who had frequently proceeded unimpeded through this intersection at previous times could, in the absence of adequate warnings, have reasonably assumed that measures would be taken by DOT during repairs to halt southerly bound traffic on State Road 25, while she traversed a left turn onto State Road 542. At the very minimum, questions of material fact remain regarding the adequacy of the warnings posted during the maintenance or repair operations; therefore the entry of summary judgment was error. Cf. Osorio v. Metropolitan Dade County, 459 So.2d 332 (Fla. 3d DCA 1984); see also Department of Transportation v. Webb, 438 So.2d 780, 781 (Fla. 1983) (the failure to place warning signs at a railroad crossing known to be dangerous is an operational-level function).
[2] In regard to DOT's argument that its actions were planning-level functions in that they complied with DOT's manual by placing warning signs in the work site area, we answer that governmental immunity cannot be invoked by simply showing that DOT formulated and adhered to a schedule of road maintenance at an accident site. Foley v. State of Florida, Department of Transportation, 422 So.2d 978 (Fla. 1st DCA 1982).
Id. at 1304 (other footnote omitted).
In our view, the foregoing reasoning establishes the right of a plaintiff to introduce testimony by an expert to the effect that the governmental entity did not adhere to a reasonable standard of care in supervising traffic at an intersection, notwithstanding its compliance with mandatory Manual provisions. Accordingly, the lower court's decision to exclude portions of the expert's testimony in this case was error.
DELL and WALDEN, JJ., concur.