SMITH, Judge.
Appellants seek reversal of a final summary judgment rendered in favor of appel-lee, State of Florida, Department of Transportation (DOT). The action below was for damages received by Pearce when the car in which he was a passenger collided with a drawbridge operated by the DOT. The accident occurred when the driver of the automobile in which the minor plaintiff was riding ignored warning signals and attempted to drive the vehicle across the opening drawbridge. The trial court determined that the appellee discharged its duty to warn oncoming vehicular traffic and that the failure of the “off-going” gate (not in the plaintiff’s lane of traffic) to come down, whether negligently caused or otherwise, was not the proximate cause of this accident. We affirm.
*265 The facts surrounding the accident, which includes a detailed description of the bridge and its warning system, are succinctly set forth in the Final Summary Judgment entered by the trial court:
On August 30, 1980, Hawser Pearce was a passenger in the rear seat of a vehicle operated by James Charles Winchell in a westerly direction on the Davie Boulevard Bridge in Fort Lauderdale, Broward County, Florida. The bridge consists of four lanes divided by a double center line, two lanes for eastbound traffic and two for westbound traffic. Before the draw span begins to open, various warnings are given to motorists, including an overhead yellow traffic sign stating “Draw Bridge Stop When Flashing.” In addition, two red lights flash when the sign is activated. Gates for on-coming traffic are lowered, and each contains flashing red lights. In addition, double red lights on the side of the road begin to flash and bells on the traffic signal begin to ring. There are two sets of gates for traffic proceeding in each direction, one in front of the lanes of so-called “on-going” traffic and one on the so-called “off-going” side, or opposite direction of traffic. On the evening of this incident, all warning devices were in operation except that the “off-going” gate, that is the gate in the lanes proceeding in the opposite direction from the car in which the Plaintiff was a passenger, did not lower though red lights previously referred to were operating and flashing. [This gate was out of order and electrical repairs were awaiting the receipt of a replacement part.] In the usual operating mode the bridge will not open until the “off-going” gate is closed. However, a by-pass switch is provided so that the bridge can be operated rather than close the bridge to vehicular or ship traffic. Until repairs could be effected, DOT elected to keep the bridge open to public use and by-passed the “off-going” gate on the east side of the span.
The testimony shows that the car in which the Plaintiff was riding approached before the gate in its lane of traffic went down, and the driver of the car in which the Plaintiff was riding observed the gate go down and observed other cars in the westbound lanes ahead of him come to a stop. The driver of the Plaintiffs vehicle slowed, and testified that he could have brought his car to a halt. However, he elected to accelerate, to cross the double center line, and to ignore the flashing lights and go around the gate in his lane and into the lanes designed for traffic proceeding in the opposite direction. After crossing the double center line and going into the opposite lane, the driver of the Plaintiffs car then returned to his lane and observed the draw opening. He testified that he continued in an attempt to jump the span but lost control of the car and struck the bridge.
On these facts, the trial court ruled:
We believe this case to be controlled by the opinion of the First District Court of Appeal in Ferrie [sic] v. City of Gainesville, 362 So.2d 345.
The STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION had a duty to warn the traveling public that the bridge was about to open. However, a person does not have a right to require the state to maintain any particular type of traffic control at a given time or place. As stated in Ferrie [sic], the traffic controls had obviously served their purpose. They were sufficient to warn the driver of the Plaintiffs car that the bridge was opening. He saw the gate come down. He saw the flashing lights, and he saw traffic in front of him come to a stop. He knew that the double lines directed him not to cross over into the “off-going” lane. In spite of this, however, he did cross the double lines into the opposite lane, went around the cars in front of him, and accelerated around the gate. As he stated, he exercised poor judgment. Under these circumstances, we conclude that the proximate cause of this accident was the action of the operator of the Plaintiffs vehicle. It was the duty of the STATE OF FLORIDA DEPART *266 MENT OF TRANSPORTATION to warn of the opening of the bridge, and this they obviously did. It is not the duty of the STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION to insure that no accident could occur or to insure against every conceivable possibility. The evidence discloses that the Defendant discharged its duty to warn and that the failure of the “off-going” gate to come down, whether negligently caused or otherwise, was not the proximate cause of this accident.
We agree with the reasoning and conclusion of the trial court. The trial judge obviously rejected, as do we, the argument that a triable issue of negligence and proximate cause was created by evidence that motorists in the local area, including Winchell, were familiar with the bridge’s fail-safe warning system which normally prevented the span from opening unless all gates were down, and by evidence that DOT’S bridgetenders were aware of this general knowledge on the part of local motorists, and were aware also that motorists would often go around the down gates for oncoming traffic if the down gates for off-going traffic remained in the upright position. We are of the view that this evidence of past negligent conduct by others would be insufficient to alter the result here.
In Ferri v. City of Jacksonville, 362 So.2d 345 (Fla. 1st DCA 1978), relied upon by the trial judge, the plaintiff's decedents were killed at a highway intersection when a truck collided with the car in which they were riding. The traffic light at the intersection was undergoing repairs and during that period it was set so that a continuous red light flashed in the direction being approached by plaintiff’s automobile and a continuous yellow light flashed in the direction of the truck. The car came to a complete stop and then entered the intersection where it was hit by the truck. In affirming the trial court’s dismissal of the complaint, this court stated:
The traffic signals had obviously served their purpose. They were sufficient to warn and to cause the person driving the Ferri automobile to come to a complete stop. Therefore, it may not be said that either defendant violated a duty to warn of a serious dangerous condition. A person does not have the right to require the city, county or state to maintain any particular type of traffic light at a given time or place. Ferri at 346.
We find further support for the trial court’s decision in Metropolitan Dade County v. Colina, 456 So.2d 1233 (Fla. 3d DCA 1984), rev. den., 464 So.2d 554 (Fla.1985). In that case both drivers could see that the traffic signal was malfunctioning. After stopping, Colina proceeded through the intersection “hoping to beat the oncoming vehicles,” even though he knew they might not stop. Colina, 456 So.2d at 1235. The Third District Court of Appeal, Judge Nesbitt, found that as a matter of law the negligence of the drivers constituted superseding,. intervening causes relieving the county of liability. The court went on to say that any negligence on the part of Dade County merely provided the occasion for the. actions of the drivers, which together were the proximate cause of the accident.
Under well-accepted rules, in order to find that the intervening cause (Winchell’s negligence) was foreseeable and that the harm that occurred was within the scope of the danger attributable to any negligent conduct by the DOT, a jury would be required to find that the DOT had knowledge that motorists would indulge in the mistaken assumption that the upright gate position prevented the bridge span from being opened, and that motorists would then proceed, in violation of ordinary traffic rules, at such speed as to be unable to bring their vehicle to a stop in event their assumption proved false. There was no showing below that the same type of harm that befell the plaintiff on this occasion had “resulted in the past from the same type of negligent conduct”; and we do not think liability could be predicated upon the theory that this is the type of harm that has “so frequently resulted from the same type of *267 negligence” that in the field of human experience the same type of result may be expected again. Gibson v. Avis Rent-A-Car System, Inc., 386 So.2d 520, 522-23 (Fla.1980). In fact, to subject the DOT to liability under the facts here would appear to stretch “duty” with respect to traffic signal and warning devices well beyond the standard applied to governmental authorities in the Ferri and Colina cases above cited. We conclude that the DOT had no duty to guard against the possibility of injury occasioned by the negligence of Winchell who, aware of the “bridge open” signals, failed to heed them based on a conscious decision that the warnings did not mean what they said, but instead accelerated his vehicle into the opening span.
The judgment appealed from is AFFIRMED.
MILLS and THOMPSON, JJ., concur.