511 So.2d 544 (1987)
PALM BEACH COUNTY BOARD OF COUNTY COMMISSIONERS, Petitioner,
v.
Alma SALAS, et al., Respondents.
No. 68556.
Supreme Court of Florida.
July 13, 1987.
*545 Marlyn J. Altman, Asst. Co. Atty., West Palm Beach, for petitioner.
Ronald V. Alvarez of Ronald V. Alvarez, P.A., West Palm Beach, for respondents.
PER CURIAM.
We have for review Salas v. Palm Beach County Board of County Commissioners, 484 So.2d 1302 (Fla. 4th DCA 1986), which expressly and directly conflicts with City of Jacksonville v. DeRay, 418 So.2d 1035 (Fla. 1st DCA 1982), review denied, 429 So.2d 5 (Fla. 1983). This Court has jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution. The issue in this case is whether a governmental entity may be held liable for failing to take reasonably necessary steps at a road maintenance work site to protect the safety of passing motorists. We answer this question in the affirmative. We also hold that a directed verdict in favor of the county was improper. Accordingly, we approve the opinion of the district court.
On September 12, 1979, a Palm Beach County land survey crew was dispatched to the intersection of Australian Avenue and Belvedere Road to work on a road alignment project. During the course of its work, the survey crew found it necessary to occupy the left turn lane of eastbound Belvedere Road. The crew blocked off the turn lane with orange traffic cones, thereby making the vehicle-activated left turn signal a perpetual red light. The crew did not, however, erect any signs prohibiting left turns from the remaining lanes. Belvedere Road has two other eastbound lanes in addition to the turn lane and the evidence is unclear as to whether the orange cones also blocked off the center lane. While the road work was underway, Marie Blount was traveling east on Belvedere Road with the intention of making a left turn onto Australian Avenue. Seeing the turn lane blocked off, she moved to the extreme right lane and made a left turn from there. When she did so, she failed to note a car traveling west on Belvedere, driven by Alma Salas. The two vehicles collided and Mrs. Salas was injured in the collision.
Mrs. Salas and her husband sued Palm Beach County, alleging that, because the county created a hazardous condition by blocking off the turn lane, it had a duty to warn motorists of that hazard. Their complaint further alleged that the county breached this duty by failing to prevent eastbound motorists from turning left into oncoming traffic and by failing to warn westbound motorists of the possibility of traffic turning left into their path. At the outset of trial, the court ruled that the Manual on Traffic Control and Safe Practices established the relevant standard of conduct for the county work crew. During trial, the Salases attempted to offer testimony from an expert witness as to the minimum standard of care set by the manual. The county, relying on DeRay as authority, argued that the manual itself, with its uniform use of mandatory, advisory, and permissive language, was the only proper evidence of the applicable minimum standard of care. The trial court agreed and granted the county's motion to strike the expert witness' testimony regarding the appropriate standard of care to the extent that it exceeded the mandatory language of the manual. Subsequently, the court granted a directed verdict in favor of the county.
On appeal the Fourth District Court of Appeal reversed and ruled that the testimony should have been allowed at trial; it also rejected the county's foreseeability argument and ruled that the question of *546 proximate cause should have gone to the jury. The district court reasoned that the county should not be allowed to follow blindly only the mandatory provisions in the manual and to ignore any other precautions necessary to protect the safety of motorists passing through the intersection. The district court also rejected the county's immunity argument, ruling that the procedures followed by the survey crew were operational in nature and, therefore, subject to liability for negligence.
The county contends that the trial court correctly limited the testimony of Salases' expert witness to the county's compliance with the mandatory provisions of the manual. The county argues that deciding whether to take any precautionary measures beyond the minimal mandatory requirements set forth in the manual is a discretionary activity and as such is free from scrutiny under sovereign immunity principles. The county relies on DeRay as authority for this proposition. In response to the county's position, the Salases argue that the field decisions at issue in this case constituted operational-level activities rather than planning-level activities and therefore were not shielded by sovereign immunity principles. The Salases argue that while the county survey crew re-routed traffic it had the duty to properly maintain and operate the intersection so as to protect the traveling public. Accordingly, the Salases conclude that evidence concerning the county's failure to adequately perform this duty could be introduced at trial, even where the necessary safety precautions exceed the mandatory steps set out in the manual.
In DeRay, 418 So.2d at 1035, a small truck failed to successfully round a sharp curve during a severe rain and crashed through a guardrail. The driver of the truck was permanently paralyzed from the waist down and sued the City of Jacksonville, alleging, inter alia, that the city had negligently maintained the road by failing to warn motorists properly about the dangerous curve. The city argued that it had implemented all of the mandatory requirements set out in the Manual on Uniform Traffic Control Devices, which the city had adopted as the standard for signalization and markings. At trial, the city's motion for a directed verdict was denied and the jury found the city fifty percent negligent. On appeal the district court found that, although the implementation of the manual's mandatory requirements was an operational-level function to which sovereign immunity principles did not apply, the city had followed the mandatory provisions of the manual and was not required to implement the advisory or permissive steps contained therein. We cannot agree.
A governmental entity is immune from tort liability arising from the performance of its discretionary governmental functions. Trianon Park Condominium Association v. City of Hialeah, 468 So.2d 912, 917 (Fla. 1985); Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010, 1020 (Fla. 1979). This immunity, however, extends only to planning-level decisions and not to operational-level actions. E.g., Department of Transportation v. Neilson, 419 So.2d 1071, 1078 (Fla. 1982); Commercial Carrier Corp., 371 So.2d at 1021-22; Weissberg v. City of Miami Beach, 383 So.2d 1158, 1159 (Fla.3d DCA 1980). Moreover, as we held in City of St. Petersburg v. Collom, 419 So.2d 1082, 1083 (Fla. 1982):
[W]hen a governmental entity creates a known dangerous condition, which is not readily apparent to persons who could be injured by the condition, a duty at the operational-level arises to warn the public of, or protect the public from, the known danger. The failure to fulfill this operational-level duty is, therefore, a basis for an action against the governmental entity.
(emphasis in original). Although the county's initial decision of whether to utilize a left turn signal was a planning-level decision, once that decision was made, the county's later decision to deactivate that signal and block off the left turn lane for road maintenance was an operational-level decision. Robinson v. Department of Transportation, 465 So.2d 1301, 1303 (Fla.1st DCA), review denied, 476 So.2d 673 (Fla. 1985). During the time its survey *547 crew worked at the intersection of Australian Avenue and Belvedere Road, Palm Beach County had the duty to carry out its maintenance responsibilities in a nonnegligent manner and to warn the motoring public of any known hazards that the presence of the survey crew and the accompanying deactivation and blocking of the turn lane created. E.g., Collum, 419 So.2d at 1083; City of Sarasota v. Eppard, 455 So.2d 623, 624 (Fla. 2d DCA 1984), review denied, 462 So.2d 1106 (Fla. 1985). If the county needed to exceed the minimal safety precautions contained within the mandatory provisions of the manual in order to adequately safeguard the public, then it had the obligation to do so. Sovereign immunity principles will not shield the county from liability if it failed to perform that duty adequately.
Finally, the county argues that the directed verdict granted in its favor was proper because Blount's negligence was the sole proximate cause of the accident. In support of this position, the county claims that Blount's alleged violation of either section 316.122 (failing to yield the right-of-way on a left-hand turn) or 316.151(2) (making a left-hand turn from the right-hand lane) was a supervening act of negligence which the county could not have foreseen. We disagree.
Initially, we point out that Blount's alleged violation of a traffic ordinance is merely evidence of her negligence and the county is entitled to have the jury so instructed. See Seaboard Coastline Railroad Co. v. Addison, 502 So.2d 1241 (Fla. 1987). The question presented here, however, is whether Blount's conduct was so unusual, extraordinary or bizarre (i.e., so "unforeseeable") that the policy of the law will relieve the county of any liability for negligently creating this dangerous situation.
We have recently addressed this issue in Department of Transportation v. Anglin, 502 So.2d 896 (Fla. 1987), wherein we recognized that not all questions involving an intervening cause present a jury question, and that "where reasonable people cannot differ," the issue may be one of law for the court to decide. Id. at 899 (quoting Stahl v. Metropolitan Dade County, 438 So.2d 14, 21 (Fla. 3d DCA 1983)). We also pointed out in Anglin that the question of whether to relieve the originally negligent actor of liability is a question of fairness and policy and not simply one of factual causation. 502 So.2d at 899 (quoting Stahl, 438 So.2d at 19).
Sub judice, it is clear that the county was a factual cause of the Salases' injuries; "but for" the creation of this dangerous situation, the accident would not have occurred. We are of the view, and we so hold, that the county could have easily foreseen that blocking off the turn lane, and deactivating the turn signal and thus leaving motorists with no guidance on if or when they could turn left, personal injury to someone was not a remote possibility. Blount's actions were not so unforeseeable that the county should be relieved, as a matter of law and policy, of all liability. Until Blount approached the intersection she had no notice that a dangerous situation existed. Once the situation manifested itself, she was waived by a flagman into either the center lane or the far right lane. Planning on turning left and having no direction from the county as to whether she could do so, Blount became confused and turned when the only operable traffic light turned green. Blount's confusion at this busy and now more dangerous intersection was not some remote possibility, it was easily foreseeable. The fact that Blount was negligent when she turned left does not render her action so bizarre, unusual or outside the realm of the reasonably foreseeable that the county's actions did not also proximately cause the Salases' injuries. The county created this danger and confusion and failed to warn the motoring public. It thus breached the duty it owed to the drivers, like the Salases who might be injured. In short, the county's conduct combined with Mrs. Blount's negligence to cause the Salases' injuries. The county and Blount are, therefore, potential joint tortfeasors and the Salases are entitled to have a jury determine what share of responsibility, if any, each should bear under *548 appropriate comparative negligence instructions. Under these facts, a directed verdict in favor of the county is a judicial usurpation of the jury's role.
Accordingly, we disapprove the First District Court of Appeal's decision in DeRay. We approve the opinion of the district court below, and remand for proceedings consistent with this opinion.
It is so ordered.
EHRLICH, SHAW and BARKETT, JJ., and ADKINS, J. (Retired), concur.
McDONALD, C.J., concurs in part and dissents in part with an opinion, in which OVERTON, J., concurs.
McDONALD, C.J., concurring in part, dissenting in part.
I agree that DeRay does not control this case and that the Manual on Traffic Control and Safe Practices does not necessarily control the issue of whether the county was negligent. Nevertheless, I believe that the decision of the trial judge to direct a verdict for the county was proper in this case.
Although a governmental entity has a duty to safeguard and warn the traveling public about a dangerous condition that it has created, the governmental entity is only required to guard against those occurrences which are reasonably foreseeable. Stark v. Holtzclaw, 90 Fla. 207, 213, 105 So. 330, 332 (1925); Pearce v. Department of Transportation, 494 So.2d 264, 266 (Fla. 1st DCA 1986); City of Sarasota v. Eppard, 455 So.2d 623, 624 (Fla. 2d DCA 1984), review denied, 462 So.2d 1106 (Fla. 1985). A governmental entity cannot be held liable for highly unusual, extraordinary, or bizarre consequences. Eppard, 455 So.2d at 624; Stahl v. Metropolitan Dade County, 438 So.2d 14, 19 (Fla. 3d DCA 1983). Nor was Palm Beach County required to anticipate that Blount would violate the law and fail to yield the right of way to oncoming traffic. See Maulding v. Atlanta Transit System, Inc., 101 Ga. App. 11, 15-16, 112 S.E.2d 666, 670 (1960) (transit system not required to anticipate that motorist would violate the law); Devries v. Owens, 295 Mich. 522, 525, 295 N.W. 249, 250 (1940) (plaintiff not required to anticipate that driver would violate statute); Klare v. Peterson, 161 Minn. 16, 18, 200 N.W. 817, 818 (1924) (plaintiff's intestate, upon entering a street intersection, had the right to assume the defendant truck driver would not violate the law); Hangen v. Hadfield, 135 Ohio St. 281, 286, 20 N.E.2d 715, 718 (1939) (plaintiff not required to anticipate that the driver of an approaching motor vehicle would violate the law). While the county might anticipate that Blount would turn left, it had no reason to suspect she would do so when a car was proceeding from the opposite direction.
In order to hold Palm Beach County liable for Mrs. Salas' injuries, a court would have to find that the county knew motorists would ignore both the law and common sense and make left turns from the far right through lane without making any attempt to check for oncoming traffic before entering the intersection. To hold the county liable on these facts would make it an insurer of motorists who act in disregard of their own safety and that of others. Metropolitan Dade County v. Colina, 456 So.2d 1233, 1235 (Fla. 3d DCA 1984), review denied, 464 So.2d 554 (Fla. 1985). See Boulos v. State, 82 A.D.2d 930, 931, 440 N.Y.S.2d 731, 732 (1981) (state is not the insurer of safety on its roads), aff'd, 56 N.Y.2d 714, 436 N.E.2d 1327, 451 N.Y.S.2d 725 (1982). Such a responsibility would be an unwarranted social burden and one which we should decline to impose. I, therefore, believe that, as a matter of law, Blount's negligence constituted the proximate cause of Mrs. Salas' injuries and that the trial court properly granted a directed verdict in favor of Palm Beach County. See Department of Transportation v. Anglin, 502 So.2d 896, 900 (Fla. 1987) (where petitioners' negligence simply provided the occasion for the driver's negligence, petitioners are not liable); Colina, 456 So.2d at 1235 (where driver attempted to cross an intersection without yielding to oncoming cars while traffic signal was malfunctioning, any negligence on Dade County's part simply provided the occasion for *549 the driver's actions). Such a holding would be consistent with the results reached by many of our sister states as well. See Fonda v. City of Mesa, 10 Ariz. App. 111, 113, 456 P.2d 957, 959-60 (1969) (city's placement of sign was not the proximate cause of an accident where a driver drove in front of oncoming traffic in the intersection despite his legal duty to yield the right of way); Carr v. Shirland Township, 66 Ill. App.3d 1033, 1037, 23 Ill.Dec. 655, 658, 384 N.E.2d 449, 452 (1978) (township was not liable where the driver failed to yield the right-of-way as the law required upon entering the intersection); McBride v. Moss, 437 S.W.2d 726, 729 (Ky. 1969) (driver's failure to exercise caution when passing a road construction site caused the resulting intersection accident); Wood v. Haas, 451 So.2d 160, 162 (La. Ct. App.) (intersection design was reasonably safe and not the proximate cause of an accident where, by using due care before crossing a major thoroughfare, the driver would have seen the approaching motorcycle), cert. denied, 458 So.2d 124 (La. 1984); Orazio v. Durel, 407 So.2d 75, 76 (La. Ct. App. 1981) (city's failure to maintain traffic light in working order was not the proximate cause of a traffic accident where the driver made a left turn at an intersection without checking for oncoming traffic); Lochbaum v. Bowman, 353 So.2d 379, 381-82 (La. Ct. App. 1977) (inoperative traffic signal was not the proximate cause of a traffic accident where the driver made a left turn at the intersection without checking for oncoming traffic), cert. denied, 354 So.2d 1380 (La. 1978); Lytle v. City of Newark, 166 N.J. Super. 191, 195, 399 A.2d 333, 336 (1979) (city's failure to keep a traffic signal functioning properly was not the proximate cause of a traffic accident at the intersection where the drivers involved failed to use due care in negotiating the intersection); Gosnell v. South Carolina Department of Highways & Public Transportation, 282 S.C. 526, 533, 320 S.E.2d 454, 458 (App. 1984) (even if state was negligent in failing to warn motorists of a dangerous road construction site, the state was not liable where the immediate and efficient cause of the collision was the motorist's improper driving).
OVERTON, J., concurs.