WARNER, J.
 

 The trial court entered final summary judgment in favor of the City of Boca Raton in a negligent maintenance suit, finding no causation between the negligent maintenance of the City’s traffic light and the intersectional collision causing injury to the plaintiff. Because genuine issues of material fact remain, we reverse.
 

 Appellant Elizabeth Marion was injured in a car accident while driving westbound on Glades Road in Boca Raton at its intersection with Renaissance Way. The intersection is a major one, Glades Road consisting of six lanes going west, two of which were turning lanes onto Renaissance Way. It is controlled by traffic lights. At the time of the accident, however, the traffic light was flashing yellow for traffic on Glades Road and flashing red for traffic on Renaissance Way. Marion started to slow down, hitting her brakes when she saw other cars to her left also braking. As she entered the intersection, she struck a vehicle driven by Catherine Wilson and owned by Lillian Petow, travelling north on Renaissance Way.
 

 Marion sued Wilson, Petow, and the City of Boca Raton for negligence result
 
 *336
 
 ing in injuries to her.
 
 [1]
 
 As to the City, she alleged that it had negligently maintained the traffic control device at the intersection in that the device had failed several times prior to the accident and the City had failed to make the necessary repairs. She further alleged that the failure to have a functioning traffic control device which stopped traffic on one street while the traffic on the other street proceeded was the proximate cause of the accident.
 

 In deposition, the City Traffic Operation Engineer testified that when the traffic control devices at this intersection have a problem or fault, a conflict monitor defaults the traffic lights into flashing red for North/South traffic and flashing yellow for East/West traffic. The City had been called to the same intersection as a result of the traffic control devices going to flashing red and flashing yellow mode twice just prior to the accident. The first fault occurred the day before, and the second fault occurred earlier on the day of the accident. Each time, the City simply reset the light and did not change the monitor responsible for tripping the lights into flashing mode. No one determined why the fault occurred. After the accident, the City replaced the monitor.
 

 The City filed a motion for summary judgment on issues of sovereign immunity, negligence and proximate cause. It contended: 1) the City’s planning decision to control intersections with traffic signals in safety mode was protected by sovereign immunity; 2) Marion could not establish that the City was negligent as the flashing traffic control was not defective; 3) Marion could not establish that the flashing light proximately caused the accident.
 

 The trial court granted the motion for summary judgment on the third ground, ruling that the flashing traffic light was not a proximate cause of the accident. The court did not address the issue of sovereign immunity. Marion appeals from this order which completely resolved the complaint as to the City. Because the court granted summary judgment, our standard of review is de novo.
 
 See Husky Rose, Inc. v. Allstate Ins. Co.,
 
 19 So.3d 1085 (Fla. 4th DCA 2009). Although the court did not rule on sovereign immunity, the City makes an argument that its decision can be affirmed on this ground as well, to which Marion has responded. Therefore, we discuss all grounds raised for the entry of final summary judgment to explain why we reverse the trial court.
 

 The City contends that it is entitled to sovereign immunity because its decision to control the intersection with a flashing light is a policy decision, not an operational one. We disagree.
 

 Our supreme court established the contours of the waiver of sovereign immunity contained in section 768.28, Florida Statutes, in
 
 Commercial Carrier Corp. v. Indian River County,
 
 371 So.2d 1010 (Fla.1979). It held that planning level decisions by the government continue to be immune, despite the statutory waiver; otherwise, in determining liability questions the judicial branch would encroach on the other branches of government in violation of the separation of powers. The statute did, however, waive immunity for operational decisions. The court explained, “Planning level functions are generally interpreted to be those requiring basic policy decisions, while operational level functions are those that implement policy.”
 
 Id.
 
 at 1021.
 

 Commercial Carrier
 
 consolidated two separate cases on petition for certiorari to the supreme court to determine the issue. In one,
 
 Cheney v. Dade County,
 
 353 So.2d
 
 *337
 
 623 (Fla. 3d DCA 1977), a defendant in an intersection collision case filed a third party complaint against Dade County alleging that Dade County had negligently maintained a traffic light at the intersection, which negligence was the cause of the accident. After establishing the planning level/operational level dichotomy for waiver of immunity, the court applied it to
 
 Cheney
 
 and held that “[m]aintenanee of a traffic signal light
 
 which is in place
 
 does not fall within that category of governmental activity which involves broad policy or planning decisions. This is operational level activity.” 371 So.2d at 1022 (emphasis supplied).
 

 The court again explained that maintenance of traffic control devices is an operational activity in
 
 Department of Transportation v. Neilson,
 
 419 So.2d 1071, 1075 (Fla.1982):
 

 Commercial Carrier
 
 established that discretionary, judgmental, planning-level decisions were immune from suit, but that operational-level decisions were not so immune. In applying these principles to the facts in that case, we held that the failure to properly maintain an
 
 existing
 
 traffic control device was an operational decision and suit could be filed against the governmental entity,
 

 (emphasis in original). The court in
 
 Neil-son
 
 reaffirmed its position in
 
 Commercial Carrier
 
 that the failure to properly maintain existing traffic control devices may be the basis for a suit against a governmental entity.
 
 See also Perez v. Dep’t of Transp.,
 
 435 So.2d 830 (Fla.1983).
 

 On the same day it issued
 
 Neilson,
 
 the court also decided
 
 City of St. Petersburg v. Collom,
 
 419 So.2d 1082, 1086 (Fla.1982). The court expanded the duty of governmental entities to warn when the government creates a known dangerous condition. Acknowledging its decision in
 
 Neilson
 
 that planning level decisions of government should be immune, the court decided that there were activities of government which could lead to judicial scrutiny:
 

 On the other hand, without substantially interfering with the governing powers of the coordinate branches, courts can require (1) the necessary warning or correction of a known dangerous condition; (2) the necessary and proper maintenance of existing improvements, as explained and illustrated in
 
 Commercial Carrier
 
 [citation omitted]; and (3) the proper construction or installation and design of the improvement plan, as explained in
 
 Neilson
 
 [citation omitted].
 

 Id.
 
 at 1086. The court held
 

 that when a governmental entity creates a
 
 known
 
 dangerous condition, which is not readily apparent to persons who could be injured by the condition, a duty
 
 at the operational-level
 
 arises to warn the public of, or protect the public from, the known danger. The failure to fulfill this operational-level duty is, therefore, a basis for an action against the governmental entity.
 

 Id.
 
 at 1083 (first emphasis in original, second emphasis supplied). Thus, the government has both a duty to warn of dangerous conditions created by it, as well as the duty to properly maintain
 
 existing
 
 traffic control devices.
 

 The court reiterated these principles in
 
 Palm Beach County Board of Commissioners v. Salas,
 
 511 So.2d 544 (Fla.1987). In that case, county workers on a road realignment project blocked off a left turn lane in a busy intersection and deactivated the left turn signal. Although they provided orange cones, they did not erect any signs prohibiting left turns from the remaining lanes. Salas attempted a left turn from the right lane and was struck by another vehicle. The court ruled that the decision to block the left turn lane and
 
 *338
 
 deactivate the signal was an operational-level decision.
 

 Although the county’s initial decision of whether to utilize a left turn signal was a planning-level decision, once that decision was made, the county’s later decision to deactivate that signal and block off the left turn lane for road maintenance was an operational-level decision. During the time its survey crew worked at the intersection ..., Palm Beach County had the duty to carry out its maintenance responsibilities in a non-negligent manner and to warn the motoring public of any known hazards that the presence of the survey crew and the accompanying deactivation and blocking of the turn lane created.... Sovereign immunity principles will not shield the county from liability if it failed to perform that duty adequately.
 

 Id.
 
 at 546-47 (citations omitted).
 

 In this case, the City exercised a planning level decision in designing the intersection at Glades Road and Renaissance Way and its traffic signal. As previously noted, this was a large intersection involving multiple lanes of traffic on Glades Road as well as the lanes on Renaissance Way. Our supreme court has accepted the proposition that every intersection may be inherently dangerous.
 
 See Dep’t of Transp. v. Konney, 587
 
 So.2d 1292, 1295 (Fla.1991). Such a large intersection as present in this case would qualify as being inherently dangerous. The City installed traffic control devices providing red, yellow, and green lights for each road, as well as turning signals to ameliorate that danger. While the City maintains that the default to “safe mode” when the designed traffic control device malfunctions is part of the planning level decision, we conclude that the inclusion of the “safe mode” is merely the City’s method of providing a warning of a known dangerous condition when the planned traffic control device malfunctions.
 
 See Collom; Salas.
 
 As such, it fulfills an operational duty to warn, not a planning level decision. Were it otherwise, then a city could never be liable for failing to maintain existing traffic control devices, because its liability could be excused simply by providing default flashing lights even in intersections where increased signalization is required and in fact used by the city.
 

 Marion’s complaint alleges the City failed to maintain an existing traffic control device which proximately caused her injuries. Based upon
 
 Commercial Carrier, Neilson,
 
 and
 
 Collom,
 
 the City has an operational duty to maintain existing traffic control devices and to warn of known hazards. The City is not immune for the negligent performance of these operational duties.
 

 The operational duty of governments to properly maintain the traffic control devices and to warn of known hazards is analogous to the duty of a landowner to a business invitee. The landowner owes an invitee the duty (1) to maintain the premises in a reasonably safe condition, and (2) to give warning of concealed perils.
 
 See Pittman v. Volusia County
 
 380 So.2d 1192 (Fla. 5th DCA 1980). A landowner is not absolved of the obligation to maintain the premises in a safe condition merely by giving warning of a dangerous condition. In
 
 Pittman
 
 the plaintiff slipped upon a foreign substance on the steps of a public building owned by Volusia County. While the plaintiff had actual knowledge of the substance on the steps, the county had only constructive knowledge of it but evidence showed that it had remained on the steps for six hours. The county asserted that the plaintiffs actual knowledge necessarily discharged its duty to maintain the premises by clearing the substance from the steps. In other words, the county
 
 *339
 
 argued that so long as the invitee knows of the danger, the landowner has no duty to keep the premises in good condition. The court noted that extending this obvious danger doctrine to bar all recovery by the plaintiff would be contrary to
 
 Hoffman v. Jones,
 
 280 So.2d 431 (Fla.1973), adopting comparative negligence.
 

 The court cited to Prosser for the proposition that a landowner may be required to provide more than a warning:
 

 [I]t is so frequently held that reasonable care requires nothing more than a warning of the danger. But this is certainly not a fixed rule, and all of the circumstances must be taken into account. In any case where the occupier, as a reasonable man, should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge,
 
 warning,
 
 or the obvious nature of the condition, something more in the way of precautions may be required....
 

 It is true also where the condition is one such as icy steps, which cannot be negotiated with reasonable safety even though the invitee is fully aware of it, and because the premises are held open to him for his use, it is to be expected that he will nevertheless proceed to encounter it. In all such cases the jury may be permitted to find that obviousness, warning or even knowledge is not enough.’
 

 Pittman,
 
 380 So.2d at 1194 (quoting W. Prosser,
 
 Law of Torts
 
 § 61, at 394-95 (4th ed. 1971)). Finding that the obviousness of the foreign condition on the steps did not preclude a jury from considering the county’s negligence along with that of the plaintiff under comparative negligence principles, the
 
 Pittman
 
 court reversed a judgment in favor of the county.
 
 See also Passaro v. City of Sunrise,
 
 415 So.2d 162 (Fla. 4th DCA1982).
 

 These same principles apply to the liability of the City for the malfunctioning traffic light. The City had a duty to maintain its traffic control devices. The record does not conclusively refute the allegations that the City was negligent in failing to repair the malfunctioning device. In a space of thirty-six hours prior to the accident, the traffic control device malfunctioned three times, defaulting to the flashing mode. While the City maintains that the flashing yellow light did not malfunction, that is not the issue. The issue is whether the existing traffic control devices were maintained and functioning as designed by the City so as to control this large intersection. The fact that the light defaulted to “safe mode” shows that the traffic control lights were not functioning as they were intended. Whether the City employees who inspected the light and failed to test the monitor deviated from common practice is not revealed. Because the allegations of negligence are not conclusively refuted on the record, we must accept them for purposes of the motion for summary judgment.
 

 The City had an obligation to warn when the traffic light malfunctioned. The flashing light may have constituted a warning, but it does not absolve the City of its obligation to maintain the traffic control device.
 
 See Salas.
 
 That warning does not bar Marion from recovering for the City’s negligence in failing to maintain the traffic control device under comparative negligence principles.
 
 See Pittman; Passaro.
 
 A jury should be entitled to consider both the City’s negligence and Marion’s comparative negligence in determining whether the City’s negligent failure to repair the traffic signal was a proximate cause of the accident.
 

 The trial court ruled that the flashing yellow light was not the cause of the accident. However, as noted above, it is not
 
 *340
 
 the flashing mode which Marion alleged was the cause of her accident but the failure of the traffic signals to function as intended by the City in normal operation. Certainly, the failure to have an operable traffic signal at that intersection created a zone of risk posing a threat of harm to motorists willing to brave traversing it.
 
 See McCain v. Fla. Power Corp.,
 
 593 So.2d 500 (Fla.1992).
 

 To the extent that the trial court may have believed that Wilson’s vehicle— which had the flashing red light — was a superseding intervening cause, that issue was one for the jury.
 
 See Goldberg v. Fla. Power & Light,
 
 899 So.2d 1105 (Fla.2005). In
 
 Goldberg,
 
 FPL employees seeking to repair power lines inadvertently deactivated a traffic signal at an intersection. Two vehicles collided in the intersection, causing the death of one of the- passengers. While a jury found FPL liable, the Third District reversed, finding that the driver’s failure to treat the inoperable signal as a four way stop constituted an intervening superseding cause as a matter of law, relieving FPL of liability.
 

 The supreme court disagreed, holding that FPL had created a zone of risk when its contractor inadvertently deactivated the traffic signal. Relying on
 
 Salas,
 
 the court concluded that the driver’s possible negligent entry into the intersection should have been a foreseeable consequence of having the traffic light out at the intersection. It did not relieve FPL of liability for its own negligence. Whether FPL was the proximate cause of the accident was a question of fact for the jury to determine. The negligence of the driver and the operator of the other vehicles involved in the collision could not be characterized as the sole intervening and superseding causes to relieve FPL, the original negligent actor, of all liability.
 

 Applying
 
 Goldberg
 
 to the present case, the fact of the City’s negligence in failing to maintain the traffic control device in operational mode was not conclusively refuted on the record. That any driver entering such a large intersection, controlled by only flashing yellow in one direction and flashing red in the other direction, might proceed across the intersection and collide with another vehicle is surely foreseeable. The negligence of either or both drivers cannot be said to be intervening, superceding causes of the accident, relieving the City of any liability as a matter of law. The trial court erred in granting summary judgment.
 

 In moving for summary judgment, the City strongly relied on
 
 Ferri v. City of Gainesville,
 
 362 So.2d 345 (Fla. 1st DCA 1978). In that case, Mr. and Mrs. Ferri were killed at an intersection when a truck collided with the car in which they were riding. The traffic light at the intersection had become inoperable. The city, while attempting to repair it, had set the traffic light to flash a continuous red light in the direction Mr. Ferri was travelling, and a flashing yellow from the direction the truck was approaching. Mr. Ferri came to a complete stop, proceeded into the intersection in front of the truck, and both occupants were killed. Their estates sued the city, and the trial court dismissed the action for failure to state a cause of action. The First District affirmed, concluding that the traffic signal had provided a warning and that Mr. Ferri heeded the warning by coming to a complete stop prior to entering the intersection. The court concluded that, “A person does not have the right to require the city, county or the state to maintain any particular type of traffic light at a given time or place,” citing to
 
 Commercial Carrier.
 

 Although at first blush the facts appear quite similar, we find
 
 Ferri
 
 both distinguishable on the facts and contrary to
 
 *341
 
 subsequent supreme court rulings.
 
 Ferri
 
 involves the duty to warn, not the duty to maintain the traffic control lights. The city was repairing the lights, and there is no indication that it was negligent in failing to maintain the lights, as there is in this case. Through the use of the flashing light, it fulfilled its duty to warn of the dangerous condition created by the disconnection of the traffic signal during repair. More importantly,
 
 Ferri
 
 preceded
 
 Neilson, Collom,
 
 and
 
 Salas.
 
 Its statement that the city did not have to “maintain” a particular type of traffic light at a given time and place is inconsistent with
 
 Neilson
 
 and
 
 Salas,
 
 as those cases place on the government an obligation to maintain existing traffic control devices. Once the government has established at the planning level the type of traffic control devices necessary for the roadway, it has a duty to carry out its maintenance of them in a non-negligent way.
 

 For the foregoing reasons, we reverse the final summary judgment and remand for further proceedings.
 

 Reversed and Remanded.
 

 GROSS, C.J., and FISHMAN, JANE D., Associate Judge, concur.
 

 [1]
 

 . Marion settled with Wilson and Petow.